E-FILED
Friday, 10 April, 2026 03:32:40 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT 01c

# STUDENT DISCIPLINARY PROCEDURES

TABLE OF CONTENTS

Article I. BACKGROUND ........ 2
Section 1.01: History ........ 2
Section 1.02: Philosophy ........ 2
Section 1.03: Scope ........ 3
Section 1.04: Nature of System ........ 3
Section 1.05: Jurisdiction ........ 3
Article II. CASE COORDINATOR AND SUBCOMMITTEE HEARING PROCEDURES ........ 4
Section 2.01: Definitions ........ 4
Section 2.02: Respondent Rights ........ 6
Section 2.03: Initial Investigation ........ 7
Section 2.04: Case Coordinator (CC) Decision Procedures ........ 9
Section 2.05: Subcommittee Decision Procedures ........ 11
Section 2.06: Privacy ........ 17
Section 2.07: Conflicts of Interest and Bias ........ 17
Section 2.08: Complaints against CCs ........ 17
Section 2.09: Actions Possible in Individual Student Discipline Cases ........ 18
Article III. APPEALS ........ 21
Section 3.01: In General ........ 21
Section 3.02: Appeals to the Director ........ 21
Section 3.03: Appeals to the SCSD ........ 22
Article IV. MISCELLANEOUS ........ 24
Section 4.01: Subcommittee Member Selection and Removal ........ 24
Section 4.02: Student Petitions ........ 25
Section 4.03: Procedures in Cases of Interim Suspension by the Chancellor ........ 27
Section 4.04: Criminal/Disciplinary History Review Committee ........ 28
Section 4.05: Access to Records and Record Retention ........ 28
Section 4.06: No Contact Directives ........ 29
Section 4.07: Informal Resolution Options ........ 30
**APPENDIX A** ........ 35

APPENDIX B ........................................................................................................................ 36
APPENDIX C ........................................................................................................................ 42
APPENDIX D ........................................................................................................................ 53
APPENDIX E ........................................................................................................................ 74

## Article I. BACKGROUND

### Section 1.01: History

The conduct governance system of the University of Illinois was established in the University Statutes by the Board of Trustees in l931 and was reaffirmed in l957. In January, l972, the Board of Trustees again affirmed the existing status of the university governance system and adopted recommendations for strengthening the system. The Trustees asserted their belief in the concept that the university discipline system shall be separate from, but coexistent with, general systems established by society to deal with the conduct of citizens of society. They emphasized again that, as provided by the Statutes in Article XI, section 2, the Senate Committee on Student Discipline (SCSD) shall have jurisdiction over the hearing and adjudication of the application of rules of student conduct to particular cases. The committee shall not have responsibility for or right to make or define the rules or regulations or to concern itself with the responsibility of the Chancellor to exercise powers to meet an emergency, safeguard persons and property, and maintain educational activities.

### Section 1.02: Philosophy

As a community of scholars, the University of Illinois at Urbana-Champaign is committed to providing an environment that values academic excellence, personal integrity, justice, equity, and diversity in an orderly and peaceful environment. Such an environment is essential for fostering the intellectual growth and personal development of all students. All members of the academic community share responsibility for maintaining conditions which support the university's mission.

The community supports each member's right to study and work in a quiet, respectful, non-violent atmosphere that is conducive to the pursuit and acquisition of knowledge. Students who voluntarily join this university community assume the obligation of abiding by the standards commonly held by that community. Every student at the University of Illinois at Urbana-Champaign is therefore obligated to assume responsibility for their actions, to respect constituted authority, to be truthful, and to respect the rights of others, as well as to protect personal and public property.

The goal of the disciplinary system is to educate and discipline the individual as well as to protect the integrity and security of the university community and its mission by serving as a deterrent.

**Section 1.03: Scope**

The university discipline system recognizes that not all violations of local, State, and Federal law affect the interests of the university community and the discipline system accepts jurisdiction in those instances where the university community's interest is substantially affected, regardless of whether the conduct in question occurs on or off campus. The rules governing conduct may come under the jurisdiction of the legal system but are typically and necessarily broader in coverage than statutes and ordinances. The university discipline system is based on the most recent edition of the Student Code. Action taken through university disciplinary committees does not abrogate the right of any dean or director to deny admission or readmission based on scholarship.

As students enrolled in the College of Law are preparing for careers in a profession demanding honesty and integrity, the College requires high standards of conduct specific to its students. Therefore, The College of Law operates under an honor system and has special additional policies and procedures outlined in an appendix to this document.

**Section 1.04: Nature of System**

Our disciplinary system is not intended to be adversarial in nature and is substantially less formal than a court of law. The majority of cases in which severe sanctions are not likely to be considered, can and should be handled informally, by meeting with a staff member to discuss the policy without the creation of a disciplinary history. The objective of a system of student discipline is to promote responsible citizenship in a complex organizational or social setting.

**Section 1.05: Jurisdiction**

The University of Illinois has jurisdiction over student conduct that occurs on university property, or in connection with official university programs or functions whether on or off university property. The university may, at its sole discretion, exercise jurisdiction over student behavior that occurs off campus and that would violate student conduct policies or regulations in those instances in which the university community’s interest is substantially affected. The university discipline system recognizes that not all violations of law affect the interests of the university community. Additionally, the university may take disciplinary action for incidents that violate the university’s rules of conduct whether such alleged conduct is not prosecuted in the courts.

In determining whether to exercise off-campus jurisdiction, the university may consider factors including but not limited to:

1. the alleged misconduct indicates the student posed or poses a threat to the safety or security of any individual; or

2. the alleged misconduct involves academic work or the forgery, alteration or misuse of any university document, record, key, electronic device, or identification.
3. The seriousness of the alleged misconduct; whether an alleged victim is a member of the campus community; the ability of the university to gather information, including the statements of witnesses; and whether the off-campus conduct is part of a series of actions that occurred either on or off campus.

**Article II. CASE COORDINATOR AND SUBCOMMITTEE HEARING PROCEDURES**

**Section 2.01: Definitions**

a) Advisor. A person who provides a respondent or complainant support, guidance, or advice. Respondents and complainants may be accompanied by an advisor of their choosing to any meeting with a CC or to any proceeding to which the advisee is invited. The university will directly communicate the case to the student. The student is responsible for updating their advisor and/or forwarding any correspondence to them.

b) Business Day. Any weekday when university offices are open for official business.

c) Case. A situation of which the Office for Student Conflict Resolution is aware and in which a student respondent has been alleged to have violated the Student Code.

d) Case Coordinator (CC). A person responsible for investigating and/or deciding alleged violations of the Student Code by undergraduate and graduate students on behalf of the university. The SCSD has designated as CCs all professional staff in OSCR as well as specific professional staff in University Housing and in select colleges. In addition, the Director is empowered to designate other trained individuals as CCs as needed. For students in the College of Veterinary Medicine (who are not alleged to have violated the sexual misconduct policy), the Dean of the college or their designee may serve as the CC, though this responsibility may be delegated to the Office for Student Conflict Resolution. For students in the Carle Illinois College of Medicine (who are not alleged to have violated the sexual misconduct policy), the Dean or their designee may serve as the CC. Procedures for the College of Law (for cases not involving allegations of sexual misconduct policy) are located in Appendix C. Regardless of the student respondent's college affiliation, however, cases involving allegations of sexual misconduct policy may only be assigned to CCs that the Director recognizes as having been trained, on an annual basis, on the issues related to dating violence, domestic violence, sexual assault, and stalking and on how to conduct an investigation and hearing process that protects the safety of complainants and promotes accountability.

e) Complainant. A person who claims to have been or is reported to have been a victim of an alleged violation. In non-sexual misconduct, complainants have the opportunity to

serve as a witness in any disciplinary proceeding.

f) Director (or Executive Director). The Director of the Office for Student Conflict Resolution or their designee.

g) Evidence. Any information, including testimony, collected during an investigation that is relevant to the determination of whether the respondent has violated the Student Code. Information that solely addresses the character of any person will be considered only after a finding of responsibility, but prior to any sanctioning determination.

h) Investigative Materials. A summary of any interviews conducted, and any documents or other materials collected during an investigation that are relevant to the determination of whether the respondent has violated the Student Code.

i) OSCR. The Office for Student Conflict Resolution.

j) Official Communication – communication between the parties and the Office for Student Conflict Resolution will happen via email between university email accounts. Paper copies delivered to the OSCR will be accepted. Should files become too big to share over email, all parties should notify an OSCR staff member. OSCR staff will create a U of I BOX folder (https://box.illinois.edu/) where the party will have the opportunity to transfer large files. An email should be sent to announce the deposit of any new correspondence in the BOX folder.

k) Panel. A group of members of the appropriate subcommittee on student conduct selected to decide a case. A Panel of the Subcommittee on Sexual Misconduct consists of three voting members. Panels of the Subcommittees on Undergraduate Student Conduct and Graduate Student Conduct consist of at least three voting members, and as many as five voting members. All Panels must include at least one student member.

l) Panel Chair (or Chair). A non-voting OSCR staff member designated by the Director to run a hearing. The Director may enlist a staff member who has extensive experience in student disciplinary procedures to serve as Chair should certain circumstances arise.

m) Party. Any person identified as a complainant or a respondent with respect to a given case.

n) Respondent. A student who is alleged to have violated the Student Code.

o) Sanction, Educational. An assignment, requirement, or task educationally related to a policy violation.

p) Sanction, Formal. A disciplinary status imposed by the university in response to a policy violation.

q) SCSD. The Senate Committee on Student Discipline. The SCSD is responsible for the student disciplinary procedures, involvement in hearing appeals for its subcommittees and the oversight of the adjudication of student discipline cases.

r) Subcommittee on Graduate Student Conduct. The group of faculty, staff, and graduate students responsible for adjudicating graduate student cases that do not involve allegations of sexual misconduct. This group is selected through an application process overseen by OSCR and approved by the SCSD. All members of the Subcommittee on Graduate Student Conduct are trained by OSCR staff.

s) Subcommittee on Sexual Misconduct. The group of faculty, staff, and students responsible for adjudicating cases that include allegations of sexual misconduct. This group is selected through an application process overseen by OSCR and approved by the SCSD. All members are trained on the university's sexual misconduct policy; the scope of the university's education program or activity; how to conduct an investigation and grievance process; how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias; any technology to be used at a live hearing; issues of relevance of questions and evidence, including when questions and evidence about the complainant's sexual predisposition or prior sexual behavior are not relevant; and other topics deemed appropriate by OSCR staff or required by state and federal law.

t) Subcommittee on Undergraduate Student Conduct. The group of faculty, staff, and undergraduate students responsible for adjudicating undergraduate student cases that do not involve allegations of sexual misconduct. This group is selected through an application process overseen by OSCR and approved by the SCSD. All members of the Subcommittee on Undergraduate Student Conduct are trained by OSCR staff.

u) Witness. A person who has relevant information regarding the facts of the case.

**Section 2.02: Respondent Rights**

a) Administrative Hearing. A type of case adjudication where a CC decides a case. Procedures are outlined in Section 2.05.

b) Advisor. The respondent may bring an advisor with them to any meeting with the CC or any disciplinary proceeding to which they are invited. This individual may communicate nondisruptively with the respondent during such proceedings but may not speak for the respondent or otherwise directly participate. An advisor who fails to follow these instructions or behaves disruptively may be asked to leave. The university will directly communicate the case to the student. Under no circumstances will the university

directly communicate with the advisor alone. The student is responsible for updating their advisor and/or forwarding any correspondence to them.

c) Appeal. The respondent may appeal the decision in their case to the appropriate appeal body. This process is described in Article III.

d) Disability Accommodations. A qualifying respondent has the right to reasonable accommodations during any disciplinary process or proceeding in accordance with §1-110 of the Student Code.

e) Interpreter. The respondent may also bring an interpreter with them to any meeting with a CC or any disciplinary proceeding to which they are invited, provided that this individual is not also a witness in the investigation. An interpreter who behaves disruptively may be asked to leave. The use of an interpreter does not preclude the respondent's ability to have an advisor present.

f) Notice. The respondent will receive timely written notification of the allegations against them and of any meetings or proceedings they are expected to attend. Notice is deemed given immediately when hand delivered or sent to the respondent's email address, or on the following business day when mailed.

g) Objectivity. All disciplinary decisions will be based on an objective evaluation of evidence. No disciplinary decisions, including credibility determinations, will be based on a person's status as a complainant, respondent, or witness or on a person's membership in a protected class as listed in the university's Nondiscrimination Policy.

h) Participation. The respondent will have an opportunity to identify and present witnesses, to provide relevant information regarding the allegations, and to participate in an administrative hearing (if applicable). In addition, the respondent may refuse to provide a requested statement or to answer a question posed to them.

i) Timely Investigation and Decision. Any investigation into the respondent's behavior will begin promptly and proceed in a timely manner. The respondent will receive a timely written decision following any CC decision, administrative hearing, or appellate review.

**Section 2.03: Initial Investigation**

(a) Intake and Review. Upon receipt of a report that a student may have engaged in misconduct, the Director will evaluate that report to determine whether the allegations, if substantiated, would constitute a violation of the Student Code. If not, the Director will close the case. If the report does describe a possible policy violation, the Director will assign the case to a CC, who will proceed according to subsection (b) below. If a

complainant or witness provided the report directly to a CC during a scheduled appointment, the Director will typically assign the case to that CC.

(b) Allegation Notice. The CC will issue a written allegation notice to the respondent (to their university email address) that includes the following:

(i) A detailed description, including the date (if known) and location (if known), of the alleged incident(s);

(ii) The identity (if known) of any complainants involved in the incident(s);

(iii) The section(s) of the Student Code that the respondent has been accused of violating;

(iv) A link to these procedures or an attached copy of these procedures;

(v) Instructions for meeting with the CC (If the CC has scheduled the meeting for the respondent, the notice will include the date and time of the meeting, and the prescheduled date should be at least five business days from the date of the notice. If the CC is instructing the respondent to schedule a meeting, the notice will include instructions and a deadline for doing so. The meeting itself should occur within seven business days of the allegation notice unless a conflict between the CC's availability and the respondent's academic schedule requires the meeting to be delayed further.); and

(vi) A statement that the university prohibits retaliation, knowingly making false statements to university officials, and knowingly submitting false information to university officials.

(c) Failure to Respond. If the respondent fails to respond to the allegation notice or refuses to meet with the CC, the investigation will continue, and OSCR may apply a registration hold.

(d) Administrative Appointment/Meeting. At the initial meeting with the respondent, the CC will summarize the allegations, explain the process, and discuss with the respondent the incident(s) under investigation, giving the respondent an opportunity to provide their perspective on the allegations. Informed by this discussion (if it occurs) and based on a reasonable evaluation of the case, the CC will determine whether the case must be decided by the CC or by the appropriate subcommittee on student conduct. The procedures for CC cases continue in §2.04. The procedures for subcommittee cases continue in §2.05.

(e) Dismissal of the Complaint or Any Allegations Therein.

(i) OSCR may dismiss a complaint, or any allegations of violations of the Student Code if, at any time during the investigation or hearing, it is determined that:

(1) OSCR is unable to identify the respondent after taking reasonable steps to do so.

(2) The respondent is not participating in the university's education program or activity and is not employed by the university.

(3) The university determines the conduct alleged in the complaint, even if proven, would not constitute a violation of the Student Code. Prior to dismissing the complaint, OSCR must make reasonable efforts to clarify the allegations with the complainant.

(f) Consolidation of Complaints. OSCR may consolidate complaints as to allegations against more than one respondent, or by more than one complainant against one or more respondents, or by one party against the other party, where the allegations arise out of the same facts or circumstances. When a case involves more than one complainant or more than one respondent, references in this section to the singular "party," "complainant," or "respondent" include the plural, as applicable.

**Section 2.04: Case Coordinator (CC) Decision Procedures**

(a) Case Coordinator Authority. With the exception of (1) cases in which the allegations, if true, would likely result in suspension or dismissal from the university (as determined by the Director after a reasonable application of the sanctioning guidance issued by the SCSD) or (2) a case involving sexual misconduct, the CC has the authority to find facts and determine whether it is more likely than not that the respondent has violated the Student Code.

(b) Additional Investigation with Contested Charges. If the respondent does not admit to the allegations and charges, the CC will proceed with a prompt, fair, and impartial investigation.

(i) Written Response. If the respondent does not admit to the allegations and charges, the respondent may provide a written response to the allegations within three business days of their first meeting with the CC, unless the CC agrees to grant them additional time. The respondent should include in this response any information, including supporting documentation, they want the CC to consider and the names and contact information for any witnesses they want the CC to interview.

(ii) Evidence Collection and Witness Interviews. After reviewing this response, the CC will attempt to interview relevant witnesses and may seek additional information, documentation, and witnesses from other sources (including any complainants).

(iii) Updates. As appropriate, the CC will provide both the respondent (and any complainants) with periodic status updates during the investigation and any subsequent proceedings.

(iv) Ongoing Notice. If, during an investigation, the CC decides to investigate allegations not included in the original allegation notice, they will provide written notification to the respondent (and any complainants) of the new allegations and any new sections of the Student Code that the respondent is accused of violating.

(v) Follow-up Interviews. The CC may request additional meetings with the respondent (and any complainants) to discuss any information gathered during the investigation.

(vi) Investigation Timeline. Any additional investigation will be completed promptly. The anticipated duration of an investigation is approximately 20 business days following the allegation notice. The actual duration of each investigation, however, may vary depending on the complexity of the investigation, the severity and extent of the allegations, the number of witnesses, the need for language assistance or accommodation of disabilities, and the possibility of interruption by break periods. If the duration of an investigation substantially exceeds these estimates, the CC will notify, in writing, both the respondent and any complainants of the delay and the reason for the delay.

(vii) Cooperation with Law Enforcement. If the incident under investigation has also been reported to the any police agency, the CC will contact the police for any information they are willing to share and may interview officers, detectives, etc. as part of the OSCR investigation. At the request of law enforcement and so as not to interfere with active police investigations, the CC may delay interviewing specific individuals for short periods of time at the discretion of the Director. However, the OSCR and police investigations are separate processes. As such, they follow different procedures, rules, and regulations, and the outcome of one does not determine the outcome in the other.

(viii) Failure to Participate. If the respondent fails to respond to communications from OSCR or to participate in the investigation, the CC is empowered to decide the case on the basis of the information collected. In such a situation, the CC is not required to provide the respondent with access to the investigative materials (as described in the following subsection) before deciding the case unless the respondent has requested such access in writing prior to the close of the investigation.

(ix) Evidence Review. Prior to deciding the case, the CC will provide the respondent with timely and equal access to the investigative materials and provide an opportunity to submit a written response in a reasonable amount of time, typically between two and five business days. However, the CC may allow the parties additional time to review and respond based on the amount of information included in the investigative materials.

(c) Decision. At the conclusion of the investigation or upon admission of responsibility by the respondent, the CC will apply the preponderance of the evidence standard to find facts and to determine responsibility for any charges. If the respondent has violated the Student Code, the CC will also issue formal sanctions (other than suspension or dismissal) and educational sanctions as appropriate. The CC will communicate this decision, along with information about the appeal process to the respondent in writing (to the university email address, if possible).

**Section 2.05: Subcommittee Decision Procedures**

(a) Subcommittee Authority. The subcommittees have the authority to decide cases in which the allegations, if true, would likely result in the respondent's suspension or dismissal from the university (as determined by the Director after a reasonable application of the sanctioning guidance issued by the SCSD). For more information about each subcommittee, see the definitions in §2.01 above.

(b) Presumption of No Violation. The respondent is presumed not to be responsible for the alleged conduct until a final determination regarding responsibility has been made at the conclusion of this process.

(c) Other University Violations

(i) Any other university violation where due process was afforded in another process, the Director of Office for Student Conflict Resolution, in consultation with the Chair of the Senate Committee on Student Discipline has the sole discretion to hold a sanction-only hearing.

(ii) A sanction-only hearing adopts the referred finding and supporting rationale of the original process. The hearing panel will meet with the student only to ask any remaining unresolved questions prior to entering deliberation (as defined in Section 2.06 (j) then determine the most appropriate outcome This includes, but is not limited to:

(1) Academic Integrity

(2) Research Integrity

(3) Instances where the student accepts complete responsibility for the allegation and is only interested in addressing the panel about potential outcomes.

(4) Policy violation involving a University High school student and/or a minor who is not enrolled in the university.

(d) Additional Investigation with Contested Charges. If the respondent does not admit to the allegations and charges, the CC will proceed with a prompt, fair, and impartial investigation.

(i) Evidence Collection and Witness Interviews. The respondent (and any complainants) will be given the opportunity to provide supporting information and documentation and to identify witnesses. The CC will review all submitted materials and will attempt to interview all relevant witnesses. The CC may also seek additional information, documentation, and witnesses from other sources.

(ii) Updates. As appropriate, the CC will provide both the respondent (and any complainants) with periodic status updates during the investigation and any subsequent proceedings.

(iii) Ongoing Notice. If, during an investigation, the CC decides to investigate allegations not included in the original allegation notice, they will provide written notification to the respondent (and any complainants) of the new allegations and any new sections of the Student Code that the respondent is accused of violating.

(iv) Follow-up Interviews. The CC may request additional meetings with the respondent (and any complainants) to discuss any information gathered during the investigation.

(v) Investigation Timeline. Any additional investigation will be completed promptly. The anticipated duration of an is approximately 30 business days following the allegation notice. The actual duration of each investigation, however, may vary depending on the complexity of the investigation, the severity and extent of the allegations, the number of witnesses, the need for language assistance or accommodation of disabilities, and the possibility of interruption by break periods. If the duration of an investigation substantially exceeds these estimates, the CC will notify both the respondent and the complainant of the delay and the reason for the delay.

(vi) Cooperation with Law Enforcement. If the incident under investigation has also been reported to the police, the CC will contact the police for any information they are willing to share and may interview officers, detectives, etc. as part of the OSCR investigation. At the request of law enforcement and so as not to interfere with active police investigations, the CC may delay interviewing specific individuals for short periods of time at the discretion of the Director. However, the OSCR and police investigations are separate processes. As such, they follow different procedures, rules, and regulations, and the outcome of one does not determine the outcome in the other.

(vii) Failure to Participate. If the respondent (or any complainant) fails to respond to communications from OSCR or to participate in the investigation, OSCR is empowered to proceed with the investigation and/or to schedule a hearing.

(viii) Evidence Review. Prior to any hearing, the CC will provide the respondent and any complainants with timely and equal access to the investigative materials. In a typical case, the parties will have five business days to review the investigative materials, but the amount of time provided for review in any particular case is at the discretion of the CC. If new evidence becomes available during the evidence review period, the CC will determine whether the amount of time remaining is sufficient for the parties to review the new evidence or whether the evidence review period must be extended.

(ix) Administrative Closure. If, during the course of the investigation, the CC and the Director agree that no reasonable panel of decision-makers could, on the basis of the evidence available, find the respondent in violation of any of the Student Code sections identified in the allegation notice, the CC will notify the

respondent that the process has concluded, that all charges have been dropped, that no disciplinary action will be taken against the respondent at that time, and that the matter may be reopened if new substantial evidence is brought to the attention of OSCR from any source.

(e) Uncontested Charges. If the respondent admits to the allegations and charges, then the CC may offer the respondent an Expedited Case Disposition (described below). If the Expedited Case Disposition is not agreed to by all relevant parties or is not ratified by the appropriate subcommittee, then the CC may offer the respondent a Sanction-Only Hearing (described below). If the respondent does not agree to a Sanction-Only Hearing, then the CC will proceed as though the charges are contested and conduct a full investigation as described in §2.06(b).

(i) Expedited Case Disposition. If the respondent admits to the allegations and charges, the CC may offer the respondent an Expedited Case Disposition (ECD), which will include a description of the behavior, a waiver of the right to a formal hearing, a waiver of the right to appeal, specific responsibility determinations, and a set of sanctions and/or behavioral restrictions. If the respondent accepts and signs the offer, the CC will also share the offer with any complainants. If they also accept and sign the offer, the CC will present the ECD to a Panel of the appropriate subcommittee. If the Panel ratifies the ECD by simple majority vote, OSCR staff will notify the signatories, and the decision described in the ECD will be final. If the Panel does not ratify the ECD, the case will proceed according to the investigation and hearing procedures described above.

(ii) Sanction-Only Hearing: If the respondent admits to the allegations and charges, the CC may offer the option of participating in a Sanction-Only Hearing. In a Sanction-Only Hearing, the proceeding will address information pertaining to potential desired outcomes. The Chair will confirm, on the record, that the respondent is accepting responsibility. If the respondent so confirms, the Chair will proceed accordingly.

(f) Appointment of Panel. The Director will appoint a Panel composed of at least one student and at least one faculty or staff member of the appropriate committee and will designate one OSCR staff member to serve as the Chair. If the respondent is a graduate student, the Panel will include a representative of the Graduate College as a non-voting member.

(g) Challenges to Panel Membership. The respondent (and any complainants) will be given an opportunity to challenge the objectivity of any Panel member. Such a challenge must be based on an identified bias (e.g., a prior relationship between the party and the member) or an identified conflict of interest. The Director will decide whether this challenge is accepted provided prior to the appointment of the Panel or during the hearing itself. If provided prior to the appointment of the Panel, the Director will consider these challenges when making a final decision regarding Panel membership. If provided during the hearing, the Chair (or the Director in the case of a challenge

directed at the Chair) will determine whether to excuse the challenged Panel member from the hearing.

(h) Notice of the Hearing. OSCR staff will notify the respondent (and any complainants) by email of the date and time of the hearing and any instructions for participating in an online format at least five business days in advance. At the Director's discretion, OSCR may arrange for an in-person hearing to take place.

(i) Hearing Rules

(i) The hearing will be closed to the public.

(ii) The Chair may exclude from the hearing any person who disrupts the orderly process of the hearing but will do so only after first issuing a warning. The Chair need not consider this cause to reschedule the hearing or continue the hearing on a later date.

(iii) The hearing may proceed (at the Chair's discretion) even if the respondent, any complainant, any advisor, or any witness fails to appear, provided the parties have been notified in accordance with §2.02(f).

(iv) Parties must submit all written, tangible, or documentary evidence and identify all witnesses during the investigation and no later than the conclusion of Evidence Review (see §2.04(ix)), provided such information was available to the party. If written, tangible, or documentary evidence or a witness's identity that was not available to a party prior to the conclusion of Evidence Review becomes available prior to, or on the day of, the hearing, the party should immediately submit this information to OSCR staff along with a statement of rationale for why it should be considered after the deadline. The Chair will then determine whether to proceed with the hearing (giving any other party sufficient time to review the information) or send the case back to the CC for further investigation. The Panel will assign appropriate weight to testimonial evidence that is provided at the hearing but was not previously provided to the CC.

(v) Persons who have no relevant evidence regarding the facts of the case may not participate as witnesses. This includes character references or witnesses to irrelevant incidents.

(vi) Any witness who is not also serving as an advisor may only participate in the hearing while providing evidence or answering questions.

(vii) The hearing will be audio recorded by OSCR staff. In order to protect the confidentiality of the process and the privacy of individuals involved, no other participants are permitted to record the hearing. The Panel's deliberation is not recorded.

(viii) The CC may participate in questioning but will not participate in the deliberation, and as such, not have a vote.

(ix) No respondent or complainant will be allowed to question, or otherwise address, any other respondent, complainant, or witness directly. Instead, when provided for by the hearing procedures, they may suggest questions to be posed by the Chair. The Chair may choose not to ask a question if it has already been answered, is irrelevant, or is inappropriate. The Chair may also reword a relevant question that is asked in a manner that, in the Chair's opinion, is confusing or is intended to disparage, intimidate, or otherwise harass the individual being questioned.

(x) The Chair will identify at least one break of no fewer than ten minutes for every two hours of the hearing. The respondent and any participating complainant may also request additional breaks as needed, provided the number of requests is not disruptive to the orderly conduct of the hearing. The Chair will decide whether to grant any such requests.

(xi) The Chair may set a reasonable time frame for the hearing and reasonable time limits for each step of the hearing but may allow deviations, provided such allowances are fair and equitable. After consultation with the other Panel members, the Chair may also decide to continue the hearing to another day for good cause. Acceptable reasons include, but are not limited to, the need for additional investigation, the need to seek additional witness testimony, or the inability to complete all required steps of the hearing process within a reasonable time frame. All parties must be notified of the date, time, and location at least five business days in advance, but prior notification of possible continuance dates will satisfy this requirement.

(xii) The Director may schedule a single hearing for multiple respondents when the allegations against those respondents arise out of the same facts or circumstances. During deliberation, each case and outcome would be determined individually.

(xiii) At the Chair's discretion, an employee of the Office of the Dean of Students may attend the hearing and the deliberation to provide administrative support to the Panel. This person will not participate in questioning or offer any opinions during deliberation.

(xiv) The Chair may set additional rules for the hearing as needed, if none conflicts with any provision of this Article.

(j) Hearing Procedures: Fact Finding

(i) Under the direction of the Chair, all Panel members and participants will introduce themselves by name and role.

(ii) The Chair will briefly describe the order of the hearing.

(iii) The Chair will invite the CC to make a statement (if they choose) regarding the investigation, and Panel members may question the CC. The respondent and any

participating complainants will then have an opportunity to suggest questions for the CC.

(iv) The Chair will invite the respondent to make an opening statement regarding the allegations. This statement should last no longer than ten minutes unless the Chair approves a greater duration. The Panel members will then question the respondent, after which the complainant will have an opportunity to suggest questions to be posed to the respondent.

(v) The Chair will invite each participating witness into the hearing, one at a time, to answer questions from Panel members. For each witness, both the respondent and any participating complainants will have an opportunity to suggest questions to be posed by the Chair.

(vi) Panel members will have a final opportunity to question any participating complainants, the respondent, and the CC regarding the allegations.

(vii) If applicable, participating complainants will be given a final opportunity to suggest questions to be posed to the respondent, and the respondent will be given a final opportunity to suggest questions to be posed to participating complainants.

(viii) The Chair will invite any participating complainant to make a closing statement regarding the allegations. This statement should last no longer than ten minutes.

(ix) The Chair will invite the respondent to make a closing statement regarding the allegations. This statement should last no longer than ten minutes.

(x) The Chair will excuse the respondent, any participating complainants, and the investigating CC from the hearing, and the Panel will enter closed deliberation to find facts and determine responsibility. The Panel will make its decisions by simple majority vote and will apply the preponderance standard.

(k) Hearing Procedures - Deliberation

(i) If the respondent(s) is found not responsible, the deliberation is complete.

(ii) If a responsibility finding is made, the Director or designee will provide any written statement of desired outcome, character statements, or impact statements. If a student has disciplinary history that was not deemed relevant to the allegations, that will also be shared after a responsibility finding is made. The Panel will determine an appropriate formal sanction (see §2.09(b) of the Student Disciplinary Procedures) for the respondent. The Panel may also issue educational sanctions and apply additional conditions or restrictions set forth in §2.09(c) of the Student Disciplinary Procedures.

(l) Notice of Action Taken. OSCR staff will communicate the Panel's decision, along with information about the appeal process, to the respondent in writing (to the university email address, if possible). Outcome letters will typically come out within one business

day after conclusion of the deliberation. The respondent will be notified of any potential delays that may arise.

(m) If there are reasonable concerns for the safety of any person as a result of providing this notice of action taken, the Director may reasonably delay providing written notice of allegation or outcome to address the safety concern appropriately. Reasonable concerns must be based on an individualized safety and risk analysis.

**Section 2.06: Privacy**

(a) Any proceeding, meeting, or hearing held as part of the process described in this appendix will protect the privacy of the participating parties and witnesses in accordance with applicable law.

(b) The university will not disclose the identity of the respondent, any complainants, or any witnesses except as necessary to implement supportive measures and accommodations, investigate the allegations, conduct any hearing or judicial proceeding, or when provided by state or federal law.

(c) Parties are not permitted to retain or disclose any investigative reports or gathered evidence solely through the grievance process due to the privacy rights of all parties contained within the investigatory materials.

**Section 2.07: Conflicts of Interest and Bias**

(a) Any OSCR staff member, CC, Panel member, or SCSD member who has a conflict of interest with respect to a specific case must recuse themselves from any role in that case.

(b) Any OSCR staff member, CC, Panel member, or SCSD member who has a bias for or against the respondent or complainant or for or against complainants or respondents generally must recuse themselves from any role in that case.

**Section 2.08: Complaints against CCs**

(a) Any respondent or complainant who believes that a CC assigned to their case has a conflict of interest with respect to the case or that they have acted inappropriately or demonstrated bias at any point during the process described in this document should report this immediately to the Director (contact information for whom is available on the OSCR website).

(b) Any respondent or complainant who has a complaint about the Director should report their concerns to the Dean of Students (contact information for whom is available on the Office of the Dean of Students website). In some cases, the Dean of Students may refer the complaining party to the Title IX Coordinator.

**Section 2.09: Actions Possible in Individual Student Discipline Cases**

(a) When determining whether a respondent has violated a university policy, CCs and Panels have the following options:

(i) **Finding of No Violation**. This action can occur at any stage of the procedure. If a finding of no violation occurs, the student has no disciplinary history. This information will not be considered in future proceedings.

(ii) **Charge(s) Dropped**. This action shall be taken when the CC or the Panel determines that the student cannot be found in violation of the university's regulations governing student conduct. The behavior may have been unrelated to the rules of conduct, or evidence may be unobtainable or insufficient, etc. A dropped charge may be reinstated at the discretion of the Director if substantial new information should become available. If a charge is reinstated, the respondent will be sent a allegation notice. If a charge is dropped, the student will have no disciplinary history related to it.

(iii) **Finding of Violation**. This action occurs when the disciplinary body has established that a policy of the *Student Code* has been violated based on a preponderance of the evidence.

(b) Formal Sanction Options:

(i) **University Reprimand**. A University Reprimand indicates that the student's behavior is inappropriate for a member of the academic community. A University Reprimand is a reportable entry in the student's disciplinary record for one year and would serve as a basis for further sanctioning should subsequent violations occur during that period. A University Reprimand will not appear on the academic transcript.

(ii) **University Censure**. A University Censure is an official communication that a student's behavior is inappropriate for a member of the academic community. A University Censure is a reportable entry in the student's disciplinary record until the student graduates and would serve as a basis for further sanctioning should subsequent violations occur during that period. A University Censure will not appear on the academic transcript.

(iii) **Conduct Probation**. Conduct Probation is a strong communication that a student is no longer in good disciplinary standing with the academic community, and that, if the student fails to comply with any assigned sanctions or otherwise violates the Student Code while on probation, they should expect to be suspended or dismissed from the university. Cases resulting in Conduct Probation are reported to the Dean of the student's college and remain a reportable entry in the student's disciplinary record for seven years. Conduct Probation will not appear on the academic transcript and shall be terminated automatically upon graduation.

(iv) **Suspension**. Suspension shall be imposed upon a student when the appropriate subcommittee of the SCSD determines that the student's relationship with the university must be suspended from the university for a definite period of time. While suspended, a student may not enroll in, or attend, any courses at the university and may not be awarded a degree from the university. Although a suspended student is not required to petition a subcommittee for permission to return, it is the responsibility of the student to communicate with their college prior to returning and to follow any applicable academic procedures. A copy of the suspension notice will be forwarded to the Dean of the students' college and to the Recorder for a notation on the transcript. Suspension records are maintained indefinitely, but the suspension transcript notation is removed after the period of suspension has expired. At the end of a suspension period, the student is placed on Conduct Probation until graduation, unless mitigating circumstances warrant a different sanction.

(v) **Dismissal**. Dismissal shall be imposed upon a student when the appropriate subcommittee or the SCSD determines that the student's relationship with the university must be terminated. While dismissed, a student may not enroll in, or attend, any courses at the university and may not be awarded a degree from the university. After a specified period, the dismissed student may petition the appropriate subcommittee for permission to pursue readmission to the university (or, if applicable, the release of their degree). A copy of the dismissal notice will be forwarded to the Dean of the student's college and to the Recorder for a notation on the transcript. Dismissal records are maintained indefinitely, but the dismissal transcript notation is removed once the student successfully petitions. A successful petition before the subcommittee does not abrogate the right of any dean or director to deny readmission based on scholarship. When the student is readmitted to the university, the student is placed on Conduct Probation until graduation, unless mitigating circumstances warrant a different sanction.

(vi) **Dismissal Held in Abeyance**. In rare cases, the SCSD or the appropriate subcommittee may determine that, while dismissal would be a justifiable formal sanction for the respondent, strong mitigating circumstances warrant holding the dismissal in abeyance for a defined period. During this period, the student may continue their enrollment provided they complete any educational sanctions on time, comply with any behavioral restrictions, and avoid any further violations of the *Student Code*. If, following a determination by a university CC that the student has not completed an educational sanction on time or has not complied with a behavioral restriction, the student will be dismissed immediately with the ability to petition during the following Fall or Spring semester and with petitioning requirements set by the Office for Student Conflict Resolution. If, following a determination by the appropriate subcommittee that the student has otherwise violated the *Student Code*, the subcommittee will dismiss the student for at least the current semester and the

following semester and will impose petitioning requirements as appropriate. The student may appeal any imposed dismissal to the SCSD in accordance with § 3.03. Cases resulting in Dismissal Held in Abeyance are reported to the Dean of the student's college and, if the student is not actually dismissed, remain a reportable entry in the student's disciplinary record for seven years.

(c) Other Sanctions or Restrictions

(i) **Educational Sanctions**. Educational sanctions are assignments, requirements, or tasks that the CC or Panel determine are warranted by their findings. They include, but are not limited to, community service, educational programs (including programs on substance use or violence prevention), research and reflective essays, presentations, restitution, and letters of apology.

(ii) **Behavioral Restrictions**. The student is restricted from certain activities on campus (e.g. participation in certain registered student organizations, intramural or varsity athletics; contact with specific people or physical locations; or other restrictions deemed just and appropriate).

(iii) **Deferral of the Degree**. The SCSD, Panel, or the Director may withhold the conferral of the degree until the disciplinary action has been resolved.

(iv) **Revocation of a Degree**. A degree awarded by the institution may be revoked for fraud, misrepresentation, or other violation of the university standards in obtaining a degree, or for other serious violations committed by a student prior to graduation.

(d) The SCSD may authorize any other sanctions it deems to be just and appropriate.

## Article III. APPEALS

### Section 3.01: In General

a) **Jurisdiction**. The Director accepts appeals of all final CC disciplinary actions. If the Director has a conflict of interest with respect to an appellant, the appeal will instead be decided by the SCSD in accordance with §3.03.

Pursuant to the University Statutes, the SCSD accepts appeals of all final disciplinary actions of its subcommittees on student conduct.

b) **Grounds for Appeal**. The appellant must base the appeal exclusively on one or more of the following grounds:

(i) Procedural irregularity that affected the outcome of the matter.

(ii) New evidence that was not reasonably available at the time the determination regarding responsibility was made, that could affect the outcome of the matter.

(iii) The CC or Panel members had a conflict of interest or bias that affected the outcome of the matter.

(iv) Any sanctions imposed by the CC or Panel were not appropriate for the violation(s) for which the respondent was found responsible.

### Section 3.02: Appeals to the Director

a) **Right to Appeal**. The respondent and any complainants have the right to appeal a final CC disciplinary action to the Director.

b) **Notice of Appeal**. The appellant must submit a Notice of Appeal and all supporting documentation to the Office for Student Conflict Resolution within five business days of the date of notice of the CC's decision.

c) **Content of Notice of Appeal**. The Notice of Appeal must contain at least the following: (1) specific grounds for appeal; (2) specific outcome requested; and (3) the appellant's reasons in support of the grounds identified and outcome requested. The appellant must submit the Notice of Appeal in writing, and the appellant must either sign the Notice of Appeal or submit it by email to OSCR from their university email address (if applicable). Oral appeals are not accepted.

d) **Sanctions Held in Abeyance Pending Appeal**. Any formal or educational sanctions imposed will be held in abeyance automatically during the period in which the appeal may be filed and, once an appeal is filed, until the Director reaches a decision on the appeal. Behavioral restrictions such as no contact directives, however, remain in place pending the appeal.

e) **Appellate Review**. The Director may, but is not required to, conduct interviews with parties involved in the matter.

f) **Authority of Director**. If one (or more) of the grounds for appeal has been met, the Director may:

(i) Affirm the decision.

(ii) Modify the decision.

(iii) Remand the case to the original CC (with instruction) or a new CC (with or without instruction) for a new decision.

(iv) Modify any sanctions or restrictions imposed.

g) **Finality of the Appeal Decision**. The decision of the Director is final and binding on all parties.

h) **Notice and Record of Decision**. The Director will provide email notification of the decision to the respondent and will also provide a rationale for the decision.

**Section 3.03: Appeals to the SCSD**

(a) **Right to Appeal**. The respondent and any complainants have the right to appeal a final Panel disciplinary action to the SCSD. Any decisions made by the Director are to be appealed to the SCSD. The Dean of Students may also appeal a decision if they believe it was manifestly unfair to the university community.

(b) **Notice of Appeal**. The appellant must submit a Notice of Appeal and all supporting documentation to the Office for Student Conflict Resolution within five business days of the date of notice of the Panel's decision.

(c) **Content of Notice of Appeal**. The Notice of Appeal must contain at least the following: (1) specific grounds for appeal; (2) specific outcome requested; and (3) the appellant's reasons in support of the grounds identified and outcome requested. The appellant must submit the Notice of Appeal in writing, and the appellant must either sign the Notice of Appeal or submit it by email to OSCR from their university email address (if applicable). Oral appeals are not accepted.

(d) **Sanctions Held in Abeyance Pending Appeal**. Any formal or educational sanctions imposed will be held in abeyance automatically during the period in which the appeal may be filed and, once an appeal is filed, until the SCSD reaches a decision on the appeal. Behavioral restrictions such as no contact directives, however, remain in place pending the appeal.

(e) **Appellate Review**.

(i) The Chair of the SCSD or their designee will identify at least three SCSD members, of which one must be a faculty member and one must be a student, to consider appeals within the SCSD's jurisdiction. These individuals will constitute the Appeal Committee. Before the membership of this Appeal Committee is finalized, OSCR will provide the respondent (and any complainants) with a list of all members of the SCSD. At this point, the parties may challenge the objectivity

of any person on this list. Such a challenge must be based on an identified bias (e.g., a prior relationship between the party and the member) or an identified conflict of interest. The Chair of the SCSD or their designee will consider these challenges when making a final decision regarding Appeal Committee membership. If the Chair of the SCSD does not serve on the Appeal Committee, they or their designee will select a faculty member to chair the Appeal Committee.

(ii) The Appeal Committee will review all materials that were provided to the Panel, the recording of the hearing, the Notice(s) of Appeal, any documentation provided in support of the Notice(s) of Appeal, and any responses to the Notice(s) of Appeal.

(iii) The Appeal Committee will meet to consider the appeal and will be advised by an OSCR staff member who did not serve as the CC; this OSCR staff member will not be allowed to vote. If the Chair of the SCSD or their designee determines that the Appeal Committee must question the CC, the Chair (or a member) of the Panel responsible for the original decision, the respondent, or any complainants to reach a decision, they will invite all of these individuals to participate in the meeting, which will be closed to the public.

(f) **Deliberations**. The Appeal Committee will deliberate in closed session and will decide by simple majority vote whether the appellant has met any of the grounds for appeal. Absent a majority to the contrary, the original decision shall be affirmed.

(g) **Authority of SCSD/subcommittee**. If one (or more) of the grounds for appeal has been met, the Appeal Committee may:

(i) Affirm the decision.

(ii) Modify the decision.

(iii) Remand the case to the original hearing body (with instruction) or a new hearing body (with or without instruction) for a new decision.

(iv) Modify any sanctions or restrictions imposed.

(h) **Finality of the Appeal Decision**. The decision of the Appeal Committee is final and binding on all parties.

(i) **Notice and Record of Decision**. OSCR staff will provide email notification of the decision to the respondent and will also include the Appeal Committee's rationale for their decision.

**Article IV. MISCELLANEOUS**

**Section 4.01: Subcommittee Member Selection and Removal**

a) **Goal**. In order to staff the graduate and undergraduate disciplinary subcommittees, students, staff, and faculty are encouraged to apply for this opportunity. Information is sent to the Registered Student Organization office, department heads within Student Affairs and various campus offices requesting that they encourage interested students to serve. The membership of the subcommittees should strive to be representative of the diverse make-up of the university community. The Board of Fraternity Affairs, Board of Sorority Affairs, Veterinary Medicine and Law School subcommittee selection processes are noted in the appendices of this document.

b) **Minimum qualifications of student members**. Minimum qualifications of student members are:

(i) A student enrolled full-time at the UIUC campus.

(ii) Approximately two full semesters are still required for the degree.

(iii) Good academic standing with at least a 2.5 grade point average.

(iv) Note: The selection committee may consider information about applicants currently subject to any disciplinary sanction or pending disciplinary action.

c) **Minimum qualifications of faculty members**. Minimum qualifications of faculty members are:

(i) A faculty member with a faculty appointment.

(ii) Primary appointment to the UIUC campus.

(iii) Demonstrated experience teaching, advising, and/or developing students.

d) **Minimum qualifications of staff members**. Minimum qualifications of staff members are:

(i) A staff member with an academic professional or civil service appointment at the UIUC campus.

(ii) Demonstrated experience working with students.

(iii) At least one year on the UIUC campus.

e) **Solicitation Process**. A Search Committee will be appointed by the Senate Committee on Student Discipline generally no later than the first week of class of the Spring Semester. It will consist of the Chair of the Senate Committee on Student Discipline, or their designee, as Chair of the Search Committee, one faculty member and one undergraduate student member of the Senate Committee on Student Discipline, and one faculty member and one undergraduate student member of the subcommittee on Undergraduate Student Conduct.

f) **Appointment**. The Search Committee will submit a slate of nominees to the Senate Committee on Student Discipline generally no later than May 1. The Senate Committee on Student Discipline shall appoint the members of its subcommittee(s) on Student Conduct. Appointments will be effective on the first day of classes of the succeeding fall semester. The appointment term is for one (1) year. Appointment for an additional term may occur upon recommendation by the Senate Committee on Student Discipline.

g) **Emergency Appointments**. Emergency, one-time appointments to a subcommittee may be made by the Executive Director if that appointee has been previously trained on the disciplinary procedures.

h) **Interim Appointments**. Interim appointments beyond one week shall be appointed by the Senate Committee on Student Discipline and must be appropriately trained on the disciplinary procedures before engaging in the process.

i) **Chair**. The subcommittee Chair must be a member of the faculty or staff.

j) **Removal**. A subcommittee member may voluntarily terminate their appointment at any time. A member may be involuntarily removed from service for cause. Examples of removal for cause are:

  (i) Failure to attend two (2) hearings without prior notice;

  (ii) Breach of confidence;

  (iii) Poor performance;

  (iv) Disruptive behavior; or

  (v) Acting in a manner that is not in the best interest of the university.

k) **Removal Process**. Requests to involuntarily remove a member for cause shall be brought to the attention of the Executive Director. The Executive Director shall submit valid requests for removal to the Chair of the SCSD. The SCSD shall have ultimate authority to consider or refuse to consider a request for removal.

**Section 4.02: Student Petitions**

a) **Petitions to the Appropriate Subcommittee on Student Conduct**

  (i) Persons who have been dismissed from the university for disciplinary reasons may petition for permission to re-enter the university.

  (ii) A petitioner is not a member of the university community. Petitioners must demonstrate that they are fit to return to the academic community, not simply that they have completed all listed sanctions in the dismissal letter.

  (iii) For a petition to be considered:

    (1) The petition must be filed before November 1 for fall petition requests and before March 15 for spring petitions;

(2) The petitioner must provide documentation that all educational requirements and conditions have been fully and completely satisfied.

(iv) This petition should minimally include:

(1) A description of the incident(s) for which the sanction was assigned and the responsibility the student had in the violation.

(2) A description of the behavioral changes the petitioner has made since the incident(s) and completion of the sanction(s).

(3) The petitioner's anticipated graduation date and the career and/or additional education plans they have following graduation.

(v) The petitioner will be invited to address the appropriate subcommittee to discuss the petition in a statement of ten or fewer minutes in duration. The petitioner may invite an advisor to the petition, but this advisor may not actively participate in the petition hearing.

(vi) If (1) the final decision in the case for which the petitioner was dismissed included a finding that the petitioner caused bodily harm to a student victim or otherwise engaged in sexual misconduct directed at a student victim, and (2) the victim indicated to OSCR staff at the time of the original decision that they would like to participate in any future petition hearings (or later indicated to OSCR staff that they would like to participate in any future petition hearings), then the victim will be invited (by email) to participate in the petition hearing. If the victim chooses to participate, they may submit a written statement or present an oral statement of ten or fewer minutes in duration to the subcommittee prior to the petitioner's statement. Neither the petitioner nor the victim will be present while the other is addressing the subcommittee.

(vii) A university CC will participate as an advisor to the subcommittee during the petition hearing but may not vote. If the CC originally assigned to the case for which the petitioner was dismissed is available and if, in the judgment of the Director, this individual's participation would not interfere with the operations of the Office for Student Conflict Resolution, then this individual will serve as the subcommittee's advisor.

(viii) Petitions to the subcommittee may not be appealed by the petitioner and are therefore not audio recorded. However, the Dean of Students may appeal a petition decision that is manifestly unfair to the university or the petitioner.

(ix) The decision of the Subcommittee will be made by a simple majority vote of members present, including the Chair. In the event of a tie vote, the petition will be denied.

(x) The subcommittee may:

(1) Deny the petition and assign a new date and new requirements for the next consideration of the petition;

(2) Grant the petition and allow the petitioner to pursue the readmission process for a specified Fall or Spring semester. Petitioners will not be allowed to register for Summer or Winter courses that are offered prior to the specified Fall or Spring semester.

(xi) Student petitioners granted permission to pursue readmission are assigned the formal sanction of Conduct Probation until Graduation. A subcommittee may assign a lesser formal sanction if strong mitigating factors warrant such action.

(xii) The subcommittee's decision to grant the petitioner the right to pursue the readmission process does not abrogate the right of any college to deny readmission on the basis of scholarship.

**Section 4.03: Procedures in Cases of Interim Suspension by the Chancellor**

a) **In General**. The Chancellor's power of interim suspension exists independently of the jurisdiction of the Senate Committee on Student Discipline. The Chancellor will develop and implement procedures to assure both effective disposition and due process. Should the Chancellor choose to refer the matter, the Senate Committee on Student Discipline will conduct a preliminary hearing to assure that the interim suspension pending a formal hearing remains necessary.

b) **Procedures for the Preliminary Hearing**.

(i) A special subcommittee of the Senate Committee on Student Discipline shall be appointed by the Chair of the SCSD to conduct a preliminary hearing. The special subcommittee shall review the circumstances of the suspension within 24 hours of referral of the matter. The preliminary hearing may be held later upon request of the Administration or of the respondent(s) if good cause is shown, or upon the initiative of the subcommittee if it appears that a hearing could not reasonably be conducted within this time period.

(ii) The special subcommittee shall be composed of three members of the Senate Committee on Student Discipline who shall be two faculty members and one student. The Executive Director shall be an ex-officio member.

(iii) The Preliminary Hearing shall be limited to the question of whether continuation of the suspension is necessary to avoid an obvious danger to the university community.

(iv) The Chancellor or designee shall present to the special subcommittee information relating to (a) the reason(s) for invoking suspension; (b) the reason(s) for seeking continuation of the suspension; (c) the prior disciplinary record of the respondent; (d) and any other information considered by the Chancellor in making their decision.

(v) The respondent(s) shall be invited to attend the Preliminary Hearing of the subcommittee and shall be permitted to present information relating to the

incident, their background, and academic record which may be relevant to the subcommittee’s decision.

(vi) Depending upon the class status of the respondent(s), the Dean of Students for undergraduate students, the Dean of the College of Law for law students, the Dean of the College of Veterinary Medicine for veterinary medicine students, or the Dean of the Graduate College for graduate students, or their respective delegates, may be invited to participate in the Preliminary Hearing.

(vii) Respondent(s) shall be permitted to invite an advisor to the Preliminary Hearing, but this advisor may not actively participate in the process.

(viii) The subcommittee shall meet in executive session and may (a) continue the suspension, (b) remove the suspension, or (c) remove the suspension upon condition(s).

(ix) If the suspension is continued, the matter shall be referred directly to the appropriate subcommittee on student conduct or to an appointed CC for consideration as a matter of immediate priority. If removed, the matter will be referred directly to the appropriate subcommittee on student conduct or to an appointed CC for consideration in due course.

(x) If the interim suspension is removed or ultimately the student is allowed to resume classes after a full hearing, the Chancellor’s office shall communicate with the respondent’s course instructors to facilitate make-up exams and assignments.

(xi) The interim suspension shall not be reflected on the respondent's transcript.

(xii) If the final hearing decision is appealed to SCSD, the three members of the special subcommittee may not be present at the appeal.

(xiii) The respondent may waive their right to a preliminary hearing, in which case the matter will be referred to the appropriate subcommittee on student conduct.

**Section 4.04: Criminal/Disciplinary History Review Committee**

Consistent with university and system policies and procedures, the multidisciplinary Criminal/Disciplinary History Review Committee, which is chaired by the Director, reviews criminal and disciplinary history disclosures from undergraduate and graduate applicants to the university. The Senate Committee on Student Discipline authorizes this review committee to issue formal and educational sanctions (see §2.09) to students who accept admission but who have disclosed incidents that are concerning to the review committee. Disciplinary officers and the subcommittees on student conduct may consider any such sanction an aggravating factor if the student is subsequently found to have violated university policy while subject to the Student Code.

**Section 4.05: Access to Records and Record Retention**

a) **Access**. Respondents and complainants are permitted to view disciplinary records and files. Hard copies will not be provided unless a failure to provide copies would prevent an eligible party from accessing the necessary information.

b) **Record Retention and Release**. Disciplinary records will be retained for a minimum of seven years. Disciplinary records are subject to release according to the retention policies dictated by the controlling formal sanction as outlined in §2.09 above. For students who have been sanctioned for more than one case, the most serious formal sanction is the controlling one. For students who have been issued their most serious formal sanction on more than one occasion, the most recent one is controlling.

**Section 4.06: No Contact Directives**

a) **Authority.** University CCs are among those responsible for the enforcement of student behavioral standards and, when possible, the prevention of violations of the *Student Code*. In addition, students are expected to comply with the reasonable directions of university officials acting in the performance of their duties. For these reasons, the Senate Committee on Student Discipline recognizes the right of CCs to direct an individual subject to student discipline, as described in §1-301(c) of the *Student Code*, to have no contact with one or more other persons.

b) **Expectations of Recipients.** A university no contact directive prohibits all contact between the identified parties ("Contact" includes physical contact with the other party as well as written, verbal, electronic, and third-party communications to them. Contact does not include an exercise of the right to free speech, freedom of the press, or right to assembly that is otherwise lawful. Contact does not include inadvertent contact or merely being in the physical presence of the other party in a public location but does include intentional conduct directed at the other party that a reasonable person under the circumstances would conclude is intended to intimidate or harass, whether such conduct occurs in public or in private.

c) **Violations.** If a No Contact Directive recipient fails to comply with the directive, they will face disciplinary action for violating §1-302(g) of the Student Code. The Senate Committee on Student Discipline recommends dismissal from the university in such cases. Please note that students who request No Contact Directives against other students thereby agree to be held to the same stipulations and will also face disciplinary action for initiating contact with the other party.

d) **Procedures.**

(i) **Notice.** If, based upon a report received or a direct request from a member of the university community, a CC believes that a No Contact Directive is warranted, the CC will notify all recipients in writing, typically by email. The directive will be effective when the notification is sent and will last until further

notice if no end date is specified. The University of Illinois Police Department is also notified of all No Contact Directives for informational purposes only.

(ii) **Meeting.** The issuing CC will attempt to meet with all recipients. At this meeting, the CC will explain their expectations in detail as well as the consequences for noncompliance. The recipient will also be given an opportunity to explain to the issuing CC why the No Contact Directive should not be continued.

(iii) **Modifications.** If the issuing CC decides that modifications or exceptions to the No Contact Directive are necessary, they will communicate these changes to all parties in writing, typically by email.

(iv) **Rescission.** A No Contact Directive may only be rescinded by the issuing CC, the issuing CC's supervisor, the Director, or, if the directive has been issued as part of an investigation, by the hearing body responsible for deciding the case.

(b) **Status of Record.** Unless issued as a sanction in a disciplinary case, a No Contact Directive does not, on its own, constitute a disciplinary finding against the student and is not part of the student's official disciplinary record. As such, it would not be reported as part of a routine disciplinary background check. A No Contact Directive issued as a sanction in a disciplinary case is subject to release according to the retention policies dictated by the controlling formal sanction as outlined in §2.09 above.

**Section 4.07: Informal Resolution Options**

(a) **Informal Resolution Meeting Process.**

(i) Once a report of alleged misconduct is received by the Office for Student Conflict Resolution, the Director will evaluate whether the resulting case should be handled through the Informal Resolution Meeting Process (IRMP). The Director will apply the following principles when conducting this evaluation:

(1) If the report includes allegations of violence and/or sexual misconduct, the case is not appropriate for the IRMP.

(2) If the report includes allegations of misconduct directed at another student, the case is not appropriate for the IRMP.

(3) If the report includes allegations of noncompliance with emergency directives (including those associated with public health emergencies), directives from the Threat Assessment Team or any other university entity tasked with threat assessment and management, or any other directives intended to protect the university community or any individual member thereof, the case is not appropriate for the IRMP.

(4) If the report includes allegations that, either on their own or in combination with the student's disciplinary history, would render the student subject to suspension or dismissal, the case is not appropriate for the IRMP.

(5) If the student subject of the report has no disciplinary history (and has not participated in the IRMP before) and none of the above rules exclude the case from consideration for the IRMP, then the case should strongly be considered for the IRMP.

(6) If the student subject of the report has some disciplinary history (or has participated in the IRMP before) and none of the above rules exclude the case from consideration, then the Director may still determine that the case is appropriate for the IRMP, but only after carefully assessing the nature of both the past incidents and the new report.

(ii) If the Director determines that a case is appropriate for the IRMP, then:

(1) The Director will assign the case to a Case Coordinator (CC).

(2) The CC will send a notice to the student informing them that (a) a report has been received; (b) no formal investigation has been opened or formal accusation has been made; (c) the student is required to meet with the CC and engage in the conversation; (d) if the student cooperates, the case will be closed without disciplinary action; (e) if the student does not cooperate, the case will be charged and investigated under Article II of the Student Disciplinary Procedures.

(3) The CC will meet with the student and broadly discuss the report and the student's experiences.

(4) Based on the meeting, the CC may refer the student to other campus or community resources, but the student will not be required to follow through.

(5) The CC will retain a record of the meeting and any referrals, but the record will not be considered part of the student's official disciplinary record.

**(b) Sexual Misconduct Informal Resolution Process**.

(i) Applicability. At the discretion of the Director and in accordance with the rules in subsection (ii) below, the Sexual Misconduct Informal Resolution Process (SMIRP) may be used to resolve any case involving allegations of prohibited conduct.

(ii) Rules.

(1) Participation in SMIRP is voluntary. Neither party is required to participate in this process. SMIRP will be initiated only if both the complainant and the respondent voluntarily consent, in writing, to participate. Consent to the SMIRP process does not waive the right to an investigation and determination of a complaint or the exercise of any other right.

(2) SMIRP may be initiated at any time prior to a determination.

(3) Any party may withdraw from SMIRP at any time prior to conclusion of the process and continue with the applicable formal procedures for investigation and adjudication.

(4) SMIRP may not be offered to any cases where the complainant is a minor.

(5) All SMIRP facilitators need to take appropriate prompt and effective steps to ensure that sex discrimination does not continue or recur in the education program or activity

(iii) Procedures.

(1) To initiate SMIRP, a respondent or complainant must submit their request, in writing, to their assigned CC (or investigator).

(2) The Director, in consultation with the Title IX Coordinator, will evaluate the case to determine if SMIRP is appropriate. The Parties' preferences are considered, but whether SMIRP is appropriate and can be utilized in response to a report or complaint is ultimately the Director's decision. Among the factors the Director may consider when determining whether SMIRP is appropriate are the following:

(a) The nature and severity of the alleged behavior

(b) The civility of the parties

(c) The complexity of the complaint or the skill of the facilitator with this type of report or complaint

(d) Whether the alleged conduct would present a future risk of harm to others

(e) The results of any safety and risk assessment or ongoing risk analysis

(f) The respondent's disciplinary history

(g) Any power dynamics between the parties

(h) Whether the process would conflict with Federal, State, or local law

(3) If SMIRP is not appropriate, OSCR staff will notify the requestor in writing.

(4) If it is determined that a case is appropriate for SMIRP, then the Director will assign a staff member with mediation skills training to serve as the facilitator for SMIRP ("facilitator").

(a) The facilitator must not be the same person as the investigator, Chair, or have any role in the decision making in Appendix D or E.

(b) Any facilitator designated to facilitate SMIRP must not have a conflict of interest or bias for or against complainants or

respondents generally or an individual complainant or respondent. Any person facilitating SMIRP must receive annual training in compliance with federal and state laws and regulations.

(5) OSCR will obtain voluntary, written confirmation that all Parties wish to resolve the matter through informal resolution before proceeding and will not pressure the Parties to participate.

(6) Before initiation of the SMIRP process, the facilitator will provide to the parties notice that explains:

(a) The allegations;

(b) The requirements of SMIRP;

(c) That, prior to agreeing to a resolution, any party has the right to withdraw from SMIRP and initiate or resume the disciplinary procedures in Appendix D or E;

(d) That the parties' agreement to a resolution at the conclusion of SMIRP would preclude the parties from initiating or resuming disciplinary procedures arising from the same allegations;

(e) The potential terms that may be requested or offered in an informal resolution agreement, including notice that an informal resolution agreement is binding only on the parties; and

(f) What information the university will maintain and whether and how the university could disclose such information for use in disciplinary procedures under Appendix D or E, if disciplinary procedures are initiated or resumed.

(7) Once initiated, the assigned facilitator will meet with the parties to understand their desires regarding process and resolution and to discuss next steps.

(8) The facilitator will then work with the parties to draft a resolution agreement. Once signed by the parties, this agreement will be reviewed by the Director in consultation with the Title IX Coordinator. If the Director determines that the agreement is reasonably enforceable and in the interest of the university, the Director will sign the agreement, at which point it will become final and binding.

(9) Once a resolution agreement is finalized, the formal complaint is thereby resolved and may not be refiled unless the Director determines that the respondent has failed to abide by the terms of the agreement. Additionally, the failure by any party to abide by the terms of the final resolution agreement may result in disciplinary action.

(10) If the parties are not able to reach an agreement within a reasonable amount of time (as determined by the Director) or the Director determines that the agreement is not both reasonably enforceable and in the interest of the university, SMIRP will conclude without resolution.

(iv). Supportive measures are available to both parties to restore or preserve that person's access to the university education program or activity or to provide support during SMIRP. The Title IX Office can facilitate available supportive measures for the parties. For more information, including the range of supportive measures, visit wecare.illinois.edu/policies/campus/interim.

(v). Records. The Office for Student Conflict Resolution will maintain SMIRP records documenting the process for a period of no fewer than seven years.

# APPENDIX A

## SELECTION AND QUORUM REQUIREMENTS FOR VETERINARY MEDICINE STUDENT SUBCOMMITTEES

I. **Subcommittee on Student Conduct for Veterinary Medicine Students**

A. **Procedures**. Unless otherwise noted in this appendix, the procedures of the subcommittee on Student Conduct for Veterinary Students will be substantially similar to those outlined elsewhere in this document.

B. **Member Selection**.

1. The subcommittee shall consist of three faculty members representing each academic department and four student members represent each Veterinary Medicine class.
2. Faculty members of the subcommittee shall be nominated by the College of Veterinary Medicine (CVM) Committee on Committees for approval by the CVM faculty for two-year staggered terms. The Chairperson of the subcommittee shall also be nominated, designated, and approved in this process.
3. Student members of the subcommittee shall be nominated by the Dean. The student members shall not be members of the Ethics Committee of the Illinois Student Chapter of the American Veterinary Medical Association (ISCAVMA)
4. The Chairperson of the Ethics Committee, the faculty advisors of the ISCAVMA, and the Associate Dean for Academic and Student Affairs shall be ex-officio non-voting members.
5. The Dean shall annually recommend the approved faculty members and nominated student members for appointment by the SCSD no later than May 1.

C. **Quorum Requirements**.

1. Quorum for original jurisdiction hearings and appeal hearings of the subcommittee shall be no less than four (4) members. The hearing committee must consist of at least one (1) faculty member and (1) student. The chair will count towards quorum.

# APPENDIX B

## REGISTERED STUDENT ORGANIZATION (RSO) CONDUCT

I. **Procedures for Responding to Allegations Against an RSO**

A. **Intake and Review**. Upon receipt of a report that an RSO may have engaged in misconduct, the Director of the Office for Student Conflict Resolution (OSCR), or their designee, will evaluate that report to determine whether the allegations, if substantiated, would constitute a violation of niversity policy. If not, the Director will close the case but may share the content of the report with other staff and/or units as appropriate. If the report does describe a possible policy violation, the Director will then evaluate the content, detail, and general credibility of the report to determine whether an informal resolution (see §I.B below), a formal CC investigation (see §I.C below), or a full team investigation (see §I.D below) is most appropriate.

B. **Informal Resolution**. If the Director determines that the report lacks sufficient detail and/or credibility to justify charges, the Director will assign the case to a CC for informal resolution. Examples of informal resolutions include organizational self-investigations, educational conversations, and mediations. Although OSCR (and other appropriate offices) may retain a record of an informal resolution, these records will not constitute formal disciplinary history for the RSO.

C. **Case Coordinator Investigation**. If the Director determines that the report is sufficiently detailed and credible to warrant formal charges and, after evaluating the complexity of the case, decides that a single CC can fully investigate the matter in a timely manner, the Director will assign the case to a CC for investigation. The CC will conduct preliminary interviews as appropriate, notify the RSO of the allegations, interview the leadership of the organization, gather documentation, and conduct any additional interviews deemed necessary and appropriate. The CC will then either issue a decision per §II below or complete an investigative report for submission to the Subcommittee on Organizational Conduct.

D. **Team Investigation**. If the Director determines that the report is sufficiently detailed and credible to warrant formal charges and, after evaluating the complexity of the case, decides that a single CC cannot fully investigate the matter in a timely manner, the Director will designate an OSCR staff member as the Investigation Coordinator, who will proceed with a Team Investigation. The concepts and procedures associated with a Team Investigation are as follows:

1. **Investigators**. Investigators in a Team Investigation are designated staff, faculty, or graduate assistants responsible for conducting fact-finding investigations into RSO misconduct. Investigators are selected by the Director and trained by OSCR staff. Investigator training focuses on the education of current university policies and emphasizes fact-finding with efficient and effective techniques to swiftly move cases forward after an incident has been reported. Investigator selection may be conducted on an as needed or cyclical basis as determined by OSCR.

2. **Organization Category Experts**. Some Investigators will be designated as Organization Category Experts (OCEs). These individuals will have a higher level of knowledge and/or experience of a specific RSO category and are intended to provide clarity and advocacy during an investigation of such RSOs. OCEs may be staff members from specialized units related to the category of the organization or their designees. If possible, there should be OCEs for the following RSO categories: Academic/Pre-Professional (including professional fraternities), Club Sports, Cultural/Ethnic, International, Religious, Residence Life, ROTC, Social Fraternities & Sororities, and Student Government & College Councils.
3. **Investigation Team**. The Investigation Coordinator shall assemble an Investigation Team of two or more Investigators based on the complexity of the investigation. The Investigation Coordinator may either serve in a consultative role in the investigation or be a participating member of the Investigation Team, as determined by the Director. If an OCE is available for the category of RSO under investigation, one or more should be included on the Investigation Team.
4. **Investigation Process**. The fundamental charge of the Investigation Team is to provide OSCR with facts and statements so that they may determine the next steps in the organization conduct process. After receiving an investigation charge from the Investigator Coordinator, the Investigation Team will immediately begin their investigation by reviewing submitted material/evidence; conducting interviews of witnesses, the leadership of the organization, and any other individuals with knowledge relevant to the case; and gathering additional documentation.
5. **Timeline**. Typical investigations should take no longer than ten business days to complete. If the Investigation Team requires additional time, they must request and receive an extension from the Investigation Coordinator.
6. **Investigative Report**. Upon conclusion of their investigation, the Investigation Team will submit an Investigative Report to the Director. This report shall contain copies of evidence and materials gathered during the investigation, summaries and/or written transcripts of interviews, and a compilation of all information discovered during the investigation. The Director will then determine whether the report will be submitted to a CC or the Subcommittee on Organizational Conduct for adjudication.

E. **Interim Suspension**. The Dean of Students, or their designee, may impose an interim suspension on an RSO who is under investigation and whose alleged conduct poses a significant risk to student health and/or safety. At the Dean's discretion, interim suspension may restrict some or all RSO activities.

1. **Notice**. If the Dean of Students, or their designee, determines that interim suspension is appropriate, they will immediately notify the RSO and other appropriate parties (e.g. the RSO advisor, any parent/national organization, or relevant university departments) in writing of the interim suspension, including the reason(s) for the interim suspension and the scope of the interim suspension.

2. **Duration**. Interim suspension shall persist until the case is decided by the appropriate hearing body unless information gathered through the course of the investigation demonstrates that student health and safety is no longer at significant risk. The staff conducting the investigation shall make a recommendation to the Dean of Students for the removal of interim suspension in such instances, though the interim suspension will remain in effect until the Dean has notified the RSO in writing that it has been lifted.

F. **Witness Anonymity in RSO Cases**. The university reserves the right to withhold the identity of certain witnesses from the RSO to protect these individuals from retaliation. In such cases, information about the status, role, etc. of the witness will be shared with the RSO to the extent that doing so will not identify them. If the case is referred to a panel of the Subcommittee on Organizational Conduct for adjudication, the identity of these witnesses will also not be shared with the panel members.

II. **Case Coordinator (CC) Decisions**

A. **Jurisdiction**. University CCs who have been designated by the Senate Committee on Student Discipline are empowered to adjudicate RSO cases in which the allegations, if substantiated, would not result in revocation of RSO status. Such CCs may only issue sanctions up to, and including, Conduct Probation.

B. **Deliberation**. The CC assigned to adjudicate a given RSO case will review the results of the investigation and determine whether it is more likely true than not true that the RSO has violated the Student Code. If a violation is found, the CC will then select the most appropriate formal sanction and any number of appropriate educational sanctions and/or restrictions (see §IV below).

C. **Notice of Action Taken**. The CC will then communicate the decision to the RSO in writing. If the RSO has been found in violation, this written communication will include information about the RSO's right to appeal the decision in accordance with §V below.

III. **Subcommittee on Organizational Conduct Decisions**

A. **Jurisdiction**. The Subcommittee on Organizational Conduct is responsible for adjudicating RSO cases in which the allegations, if substantiated, could result in revocation of RSO status.

B. **Procedures**. Unless otherwise noted in this appendix, the procedures of the Subcommittee on Organizational Conduct are substantially similar to those outlined in Article II, Section 2.05 of the Student Disciplinary Procedures.

C. **Member Selection**.

1. The subcommittee shall consist of faculty, staff, and students.
2. All members of the Subcommittees on Undergraduate and Graduate Student Conduct are also members of the Subcommittee on Organizational Conduct.

3. Additional faculty and staff members of the subcommittee shall be appointed as needed by the Vice Chancellor with the approval of the Senate Committee on Student Discipline.

D. **Quorum Requirements**.

1. Quorum for hearings shall be no less than three (3) voting members. The hearing committee must consist of at least one (1) faculty/staff member and one (1) student. Each hearing committee will be chaired by an OSCR staff member, and the chair will not vote, and as such, does not count towards quorum.

IV. **Actions Possible in Organizational Conduct Cases**

A. When determining whether an organization has violated a university policy, decision-makers have the following options:

1. **Finding of No Violation**. This action can occur at any stage of the procedure. If a finding of no violation occurs, the organization has no disciplinary history. This information will not be considered in future proceedings.

2. **Charge(s) Dropped**. This action shall be taken when the CC or the hearing committee determines that the organization cannot be found in violation of the university's regulations governing organization conduct. The behavior may have been unrelated to the rules of conduct, evidence may be unobtainable or insufficient, etc. A dropped charge may be reinstated within one calendar year of the date it was dropped if substantial new information should become available. If a charge is dropped, the organization has no disciplinary history related to it.

3. **Finding of Violation**. This action occurs when the CC or hearing committee has established that a policy of the *Student Code* has been violated based on a preponderance of the evidence.

B. **Formal Sanction Options**.

1. **University Reprimand**. A University Reprimand indicates that the organization's behavior is inappropriate for a member of the academic community. A University Reprimand is maintained in the organization's disciplinary file for one year and would serve as a basis for further sanctioning should subsequent violations occur.

2. **University Censure**. A University Censure in an official communication that an organization's behavior is inappropriate for a member of the academic community. A University Censure is maintained in the organization's disciplinary file for four years and would serve as a basis for further sanctioning should subsequent violations occur.

3. **Conduct Probation**. Conduct Probation is a strong communication that an organization student is no longer in good disciplinary standing with the academic community, and that, if the organization fails to comply with any assigned sanctions or otherwise violates the *Student Code* while on probation, that organization should

expect to have their status as an RSO revoked. Conduct Probation records are maintained for seven years after the end of the probationary period.

4. **Revocation**. Revocation of registered organization status shall be imposed upon an organization when the hearing body determines that the organization's relationship with the university should be terminated. When Revocation is imposed, the hearing committee will specify a minimum duration for the sanction. After this time has elapsed, the original hearing body may consider formal requests for permission to pursue registration. Revocation records are maintained indefinitely.

5. **Formal Sanction Held in Abeyance**. In rare cases, the SCSD, appropriate subcommittee, or CC may determine that a certain sanction is the appropriate formal sanction for an organization, but strong mitigating circumstances warrant holding the formal sanction in abeyance. The organization will continue to be recognized under restrictions and conditions. An organization found to have violated the conditions or restrictions of a formal sanction held in abeyance will minimally have the formal sanction imposed. Formal sanctions held in abeyance for organizations must include an expiration date.

C. **Other Conditions or Restrictions**.

1. **Other educational sanctions**. This may include but is not limited to mandated service to the community, educational programs, research and reflective essays, presentations to the community, restitution, letters of apology, or other related discretionary sanctions.

2. **Restrictions**. The organization may be restricted from certain activities (e.g. serving alcohol at social events; participation in university activities and events; recruitment, or other restrictions deemed just and appropriate).

D. The Senate Committee on Student Discipline may authorize any other sanctions it deems to be just and appropriate.

V. **Appeals**

A. **Jurisdiction**. The Director accepts all appeals of disciplinary decisions issued to an RSO by a CC. If the Director has a conflict of interest with respect to an appellant, the appeal will instead be decided by the Senate Committee on Student Discipline. The Senate Committee on Student Discipline accepts appeals of all disciplinary decisions issued by the Subcommittee on Organizational Conduct.

B. **How to Appeal**. An RSO that has been found in violation of the Student Code may appeal that decision by submitting a written Notice of Appeal to the Office for Student Conflict Resolution within five business days of the original decision. The Notice of Appeal must contain at least the following: (1) specific grounds for appeal (see below); (2) specific relief requested; and (3) appellant's reasons in support of the grounds selected and the relief requested.

C. **Grounds for Appeal**. The appellant RSO must base the appeal exclusively on one or more of the grounds below:

1. Procedural irregularity that affected the outcome of the matter.
2. New evidence that was not reasonably available at the time the determination regarding responsibility was made, that could affect the outcome of the matter.
3. The CC or hearing committee members had a conflict of interest or bias that affected the outcome of the matter.
4. Any sanctions imposed by the hearing body were not appropriate for the violation(s) for which the RSO was found responsible.

D. **Appeal Procedures**. Unless otherwise noted in this appendix, the appeal procedures of in RSO cases are substantially similar to those outlined in Article III of the Student Disciplinary Procedures.

VI. **Additional Information**

A. **National/Parent Organizations**. If an RSO is affiliated with a national or parent organization, OSCR, assigned investigators, and other applicable offices reserve the right to communicate with that organization about relevant allegations, investigations, and outcomes, provided such communications are in compliance with FERPA.

B. **Definition of an RSO Event**. For purposes of holding RSOs accountable, the university considers an RSO event to be:

1. Any activity sponsored and/or hosted by the RSO and about which members and/or the public are notified (formally or informally);
2. Any activity funded by the RSO; or
3. Any activity reasonably associated with the RSO through, for example, the actions of its members.

An RSO event may occur on or off campus, including online. And an RSO event is not determined by the number of members present or participating. Lastly, the university may pursue disciplinary action against one or more individuals and an RSO for the same incident, and the responsibility for the individual(s) and the RSO will be assessed independently.

## APPENDIX C

## PROCEDURES OF THE SUBCOMMITTEE ON STUDENT CONDUCT FOR LAW STUDENTS

### I. **Honor Code**

Since students in the College are preparing for careers in a profession demanding honesty and integrity, the College requires high standards of conduct. The College operates under an honor system, one feature of which is that all examinations are unproctored. The College's Code of Student Responsibility, reprinted below, details the grounds on which students may be found in violation of this honor system. The Code also imposes additional obligations on students.

### II. College of Law Code of Student Responsibility

§ 1.01 Students enrolled at the University of Illinois College of Law are subject to the Student Code.

§ 1.02 As future members of the legal profession, students at the College of Law bear a special responsibility to insist upon and to maintain high standards of integrity. Accordingly, it is expected that each student of the College of Law will scrupulously regard the rights of others and will observe high standards of integrity in his or her personal conduct. Toward this end the College of Law has defined the following academic and nonacademic violations, set out in Sections 1.03-1.08, which are subject to discipline in accordance with the procedures set forth in Sections 2.01-5.09.

§ 1.03 Misrepresentation. Misrepresentation is any act of fraud or deception by which the student gains or attempts to gain a benefit or advantage from the university, its constituent institutions, its faculty, staff, or students, or persons dealing with the university. Examples of this offense include, but are not limited to, the following:

(a) forging or altering any university document, record, or instrument of identification;

(b) furnishing material information which is known by the student to be false to any official, other employee, or agent of the university;

(c) furnishing to any person material information which is known to the student to be false and which related to the student's academic record or otherwise concerns activities in the university.

§ 1.04 Unfair Advantage. Unfair advantage is any act of fraud, deception, or improper influence by which the student gains or attempts to gain an academic benefit or advantage from the university, its constituent institutions, its faculty, staff, or students, or persons dealing with the university. "Academic benefit or advantage" results from the student's course work as well as from other activities (such as Law Review, Moot Court, and Client Counseling

Competition), which in any manner affect the student's professional education, training, or development. Examples of this offense include, but are not limited to, the following:

(a) unauthorized copying collaboration, or use of notes or books on any examination, project, or paper;

(b) failure to observe time limits set for an examination by the instructor in charge;

(c) lying about the performance of academic work;

(d) submitting the same work, or portions of the same work, in more than one class unless explicitly authorized to do so;

(e) submitting as one's own and without citation, writings or ideas known by the student to be of another (including those of any person furnishing writing for hire) in any academic pursuit;

(f) offering or attempting to offer money or other thing or service to a member of the university community, including its faculty, staff, and students, in an effort to gain academic benefit or advantage.

§ 1.05 Interference with Property. Interference with property is any taking or destruction of the property of the university, of its constituent institutions, or of its faculty, staff, or students. Examples of this offense include, but are not limited to, the following:

(a) stealing, damaging, or destroying notes or books of students;

(b) stealing, hiding, or vandalizing library materials;

(c) stealing, damaging, destroying, or otherwise misusing other University property.

§ 1.06 Harassment. Harassment is any physical assault upon, threat against, or substantial interference with work or study of a member of the university community, including its faculty, staff, and students, as well as of any other person who is lawfully present on university premises. Examples of this offense include but are not limited to:

(a) intentionally blocking or attempting to block physical entry to, or exit from, a university building, corridor, or room to anyone apparently entitled to enter or leave;

(b) engaging in shouted interruptions, whistling, derisive laughter, or other means that alone or in conjunction with others prevent or seriously interfere with a class, speech program, or other teaching or learning process, under circumstances where the student knows or reasonably should have known the serious interference would occur.

(c) engaging in disruptive behavior directed toward one of more individuals in the library, offices, or other place, that seriously interferes with the work of others.

§ 1.07 Gross Neglect of Professional Duty. Gross neglect of professional duty is a clear and knowing violation of generally accepted standards of integrity. Examples of this offense include but are not limited to:

(a) failure to report any suspected violation of this Code by any student having reasonable grounds to believe that such a violation has occurred;

(b) failure to cooperate with the College of Law Committee on Student Discipline or with the Secretary to such Committee with respect to the conduct of any investigation or proceeding held in connection with any alleged violation by any other person of the College of Law Code of Student Responsibility;

(c) aid intentionally given to another student in violation of this Code;

(d) embezzlement or other breach of trust.

§ 1.08 Other University Offenses. It is a breach of this Code to fail to obey any duly promulgated University rule or regulation relating to student conduct and which is applicable to students in the College of Law, whether now or hereafter adopted by the Board of Trustees or other University authority.

## RULES GOVERNING DISCIPLINARY PROCEEDINGS

### PART A. Application

§ 2.01 These procedures apply only to individual misconduct, and the appropriate procedures, as contained in the System of Conduct Governance of Students, will be implemented should a student enrolled in the College of Law become involved in an incident of extraordinary group misconduct.

### PART B. Participants in Disciplinary Process

§ 3.01 Administrative Officer means the Dean, an Associate Dean or Assistant Dean of the College of Law, any Officer of the Campus or University Administration, and any employee of the University to whom supervisory responsibility over matters relating to student conduct has been delegated except members of the Senate Committee on Student Discipline or of the Subcommittee.

§ 3.02 Adviser means a person who has agreed to appear with Respondent at any proceeding under these Rules. A Respondent may be accompanied by and may consult with his or her Adviser at any such proceedings, but the Adviser may not represent Respondent.

§ 3.03 Alternate means a person appointed as a faculty or student Alternate to the Subcommittee who has not yet been designated by the Chair to replace an excused Member.

One (1) faculty Alternate and one (1) student Alternate shall be regularly appointed, and additional appointments shall be made as necessary to provide a full Subcommittee to conduct the proceedings concerning a particular Respondent. Alternates shall have the same qualifications as and shall be selected in the same manner as Members. A faculty Alternate may only replace an excused faculty Member, and a student Alternate may only replace an excused student Member. Until designated for such replacement by the Chair, an Alternate shall not participate in any hearing, consideration, deliberation or vote concerning any matter before the Subcommittee.

§ 3.04 Chair means the individual serving as chairperson of the Subcommittee. The Chair shall be selected according to current procedures of the College of Law and the Senate Committee on Student Discipline.

§ 3.05 Counsel means the person who has agreed to represent Respondent in any proceeding under these Rules. A Respondent has a right to consult with and be represented by Counsel in all such proceedings, and the person so serving shall be the sole representative of Respondent. If Respondent has engaged Counsel, he or she shall notify the Dean of Counsel's name and address.

§ 3.06 Dean means the Dean of the College of Law or, when so designated by the Dean or Acting Dean, an Associate Dean. In carrying out his or her responsibilities under these Rules, the Dean may consult with the Executive Committee of the College of Law.

§ 3.07 Member means a person appointed as a faculty or student Member of the Subcommittee who has not been excused, and a person appointed as a faculty or student Alternate who has been designated by the Chair to replace an excused Member. Faculty Members shall be appointed from among permanent members of the College of Law faculty who are not Administrative Officers or members of the College Executive Committee. Student Members shall be appointed from among full-time students who are J.D. candidates registered in the College of Law. Members shall be selected according to current procedures of the College of Law and the Senate Committee on Student Discipline.

§ 3.08 Respondent means a law student upon whom a Formal Notice has been served.

§ 3.09 Secretary means an Administrative Officer or permanent member of the College of Law faculty who is not a Member of the Subcommittee or of the Senate Committee on Student Discipline and who is appointed by the Dean to investigate the allegations in a Formal Notice or instead or in addition to assist in drafting a Formal Charge and to present evidence regarding the charge to the Subcommittee. The Secretary should obtain and present all available relevant information which, in the Secretary's judgment, will assure an informed and fair administrative review and Subcommittee hearing. The same person or different persons may serve as Secretary at various stages, as determined by the Dean pursuant to § 5.04.

§ 3.10 Subcommittee means the Subcommittee on Student Discipline for Law Students, consisting of three (3) faculty Members and (2) student Members. Any hearing before,

submission to or deliberations by the Subcommittee shall include all five (5) Members then serving. Except as otherwise provided herein, Subcommittee decisions shall be by majority vote.

§ 3.11 Witness means a person called upon to provide information at a Subcommittee hearing or in a Secretary's investigation. All law students and university employees shall cooperate fully when called upon to be Witnesses, and any refusal to be interviewed or to produce evidence may be a matter for disciplinary or employment action. A Witness may refuse to testify or produce evidence which would tend to inculpate that person in any Violation of university or College Regulations or in any violation of law. Any statement by or evidence of Respondent made or produced by Respondent to Counsel or an Adviser in that person's capacity as Counsel or Adviser is privileged.

## PART C. General Definitions and Guidelines

§ 4.01 Formal Charge means a statement of the Violation(s) charged with reference to the relevant university Regulations and College of Law Disciplinary Rules, and a statement of the ultimate facts which constitute the specification of the Violations(s) charged.

§ 4.02 Formal Notice means a statement that the Respondent is alleged to have been involved in a possible Violation, a summary statement of the alleged facts, and specification of the Violation(s) suggested by the alleged facts.

§ 4.03 Informal Resolution means a process whereby the matter is resolved informally by counseling or by permitting Respondent to accept a specified Sanction without further proceedings. A Sanction may be so imposed by the Dean only with Respondent's consent. If a proposed Sanction is accepted by Respondent, it will be imposed forthwith and without opportunity for appeal. If a proposed Sanction is refused, the Dean may proceed with the next step in the administrative process. The fact a Sanction was offered and refused and the nature of the proposed Sanction shall not limit or otherwise affect any further action.

§ 4.04 Report is the written submission of the Secretary to the Dean upon conclusion of an investigation. It shall contain (i) a summary of the relevant facts and (ii) conclusions as to whether there is a factual basis for a Formal Charge.

§ 4.05 Sanctions which may be imposed upon informal disposition or upon a finding of a Violation by the Subcommittee are: (1) reprimand not of official record; (2) reprimand of official record; (3) conduct probation not of official record; (4) conduct probation; (5) suspension; or (6) dismissal. A sanction not of official record does not appear on the student's transcript but may have to be reported by the Dean and the student to appropriate authorities regarding a candidate's fitness for admission to the bar. The fact Respondent has been or may be subject to other sanctions for the same conduct, whether such sanctions have been or may be imposed by civil authorities or by academic officials, shall not bar the initiation of disciplinary proceedings or the imposition of Sanctions for Violations. The fact a student has been or may

be subject to Sanctions under this Code shall in no way affect the power of any academic official to grade or otherwise evaluate such student's performance for academic purposes.
§ 4.06 Service of papers upon Respondent shall be accomplished by delivery to Respondent personally or by regular mail to Respondent's current local address specified in College of Law records. If mailed at a time when regular semester classes are not in session, a copy shall be mailed to any permanent address specified in College of Law records. If Respondent has notified the Dean of his or her Counsel's name and address, a copy shall be mailed to Counsel at the specified address.

§ 4.07 Violation means conduct proscribed by university Regulation relating to student conduct or by the College of Law Code of Student Responsibility.

## PART D. Administrative Procedures

§ 5.01 Preliminary Determination. Upon receipt of information regarding a possible violation by a law student, the Dean may informally gather such additional information as will facilitate a preliminary determination of how to proceed. If the Dean determines that a possible violation has occurred, he or she shall issue a Formal Notice unless it appears that the interests of the student involved and of the College of Law and university would be best served by counseling the student.

§ 5.02 Notice to Respondent; Reply and Action. The Dean shall arrange for Service of the Formal Notice upon Respondent, together with copies of relevant university Regulations and College of Law Disciplinary Rules and shall call particular attention to Respondent's right to Counsel and an Adviser and right to reply. Upon a request for an opportunity to reply, submitted to the Dean in person or by telephone or letter within three (3) business days of the date upon which the Formal Notice was personally delivered or five (5) business days of the date upon which the Formal Notice was mailed, the Dean shall set a date for the reply and the manner in which it shall be received and shall so notify Respondent. In the reply, Respondent may present evidence in rebuttal of the summary of facts contained in the Formal Notice and instead or in addition may provide information bearing upon the propriety of Informal Resolution. If no reply is made, the Dean shall designate a Secretary and refer the Formal Notice to the Secretary. If a reply is made, the Dean upon consideration of it may withdraw the preliminary determination of a possible Violation, attempt Informal Resolution, or designate a Secretary and refer the Formal Notice to the Secretary. If a Formal Notice is referred to the Secretary, the Dean shall arrange for Service upon Respondent of notification of this referral and of the Secretary's name, address and telephone number.

§ 5.03 Investigation. The Secretary shall identify and interview available Witnesses and shall identify and obtain relevant and available real or documentary evidence. Statements of Witnesses or summaries of interviews shall be prepared or obtained and preserved. Respondent shall have the right to submit statements or real or documentary evidence to the Secretary and to suggest people whom the Secretary should interview. Upon completion of the investigation, the Secretary shall prepare and submit a Report to the Dean accompanied by all

statements, summaries and real and documentary evidence obtained or prepared by the Secretary.

§ 5.04 Charge or Other Disposition. Upon review of the Report, the Dean may determine that the evidence is insufficient to establish a Violation and withdraw the Formal Notice, refer the matter back to the Secretary or to a newly appointed successor for further investigation, attempt Informal Resolution, or refer a Formal Charge to the Subcommittee. If Informal Resolution is sought, the Dean shall first provide Respondent with a copy of the Report and an opportunity to inspect all evidence submitted to the Dean by the Secretary. If the Dean decides to refer a Formal Charge, he or she shall designate the investigation Secretary or a successor to assist in preparation of the Formal Charge and to present evidence to the Subcommittee. The Dean shall arrange for Service of the Formal Charge upon Respondent together with a copy of the Report, notice of Respondent's right to inspect and copy all evidence submitted to the Dean by the Secretary, a list of the name of all Subcommittee Members and Alternates, and the name, mailing address and telephone number of the Chair. Once referred to the Subcommittee, a Formal Charge may be withdrawn only upon recommendation of the Dean and approval of the Subcommittee.

## PART E. Pre-Hearing Determinations; Preparation for Hearing

§ 6.01 Recusal. The Chair shall provide copies of the Formal Charge to Subcommittee Members and Alternates. Any Member or Alternate who believes he or she would be unable properly to participate because of serious illness, special interest or prior knowledge which has resulted in prejudgment shall notify the Chair and shall be excused.

§ 6.02 Motions, Challenges and Requests. All motions, challenges and requests shall be delivered in writing to the Chair within five (5) business days of the date on which the Formal Charge was personally served upon Respondent or within seven (7) business days of the date on which the Formal Charge was mailed to Respondent. Except in extraordinary circumstances, no motion, challenge or request will be considered unless timely made. Challenges shall be considered before motions and requests. The Subcommittee shall grant a challenge for cause, dismiss all or part of a Formal Charge, or otherwise grant a motion or request (except for Respondent's request for an open hearing or to transcribe or record the hearing proceedings) only upon the basis of information formally presented to the Subcommittee and only after affording the opposing party sufficient opportunity to contest the factual and legal bases for such action.

§ 6.03 Peremptory Challenge. Respondent may challenge one Subcommittee Member or Alternate without stating any cause. Upon receipt of such peremptory challenge, the named person shall be excused.

§ 6.04 Challenge for Cause. Respondent and the Secretary may challenge any Subcommittee Member or Alternate for cause. Such challenge shall state the special interest, prior knowledge or other cause for the challenge and sufficient facts to support the cause asserted. The person

challenged shall not participate in the Subcommittee's actions regarding the challenge, but may be called upon by the Subcommittee to comment on the facts alleged to support the challenge. Each challenge shall be considered and decided separately. If the challenge is granted, the person challenged shall be excused.

§ 6.05 Motions. Normally, the only motion allowable at the prehearing stage of the proceedings is a motion to dismiss on the ground that the facts alleged in the Formal Charge, presumed to be true for purposes of the motion, do not or legally may not constitute a Violation.

§ 6.06 Requests. Normally, only these types of requests are allowable: (1) a request by Respondent that the hearing be open, which shall be granted as a matter of right; (2) a request by Respondent to transcribe or record the hearing proceedings at Respondent's own expense, which shall be granted as a matter of right; (3) a request for an extension of the time to file a challenge, motion or request, which shall be ruled upon by the Subcommittee.

§ 6.07 Prehearing Conference. The Secretary and Respondent shall confer promptly after the Formal Charge has been served to consider and seek agreement on such matters as may facilitate a timely and fair disposition. They shall agree upon no fewer than three (3) hearing days and so notify the Chair. If they agree to a two-stage hearing procedure, they shall so notify the Chair, in which case the presentation of evidence principally related to an appropriate Sanction and related deliberations shall be deferred to a second stage following presentation of evidence, deliberations and findings on whether Respondent committed the Violation charged. They shall review together the evidence which will be presented and shall stipulate to all evidence as to which there is no dispute as to fact.

§ 6.08 Notice of Hearing; Responsibility of Participants. The Chair shall take account of the dates agreed to by the Secretary and Respondent and of the availability of the Subcommittee in setting a date for the hearing at least ten (10) business days following the date of the Formal Charge. By Service upon Respondent and like communication to the Secretary, the Chair shall give written notice of the date, time and place set for the hearing. For good cause shown the Chair may grant a continuance requested by Respondent, the Secretary or a Member, subject to the request by a Member that the question be put to a vote of the Subcommittee. It is the responsibility of the parties to notify and secure the presence of witnesses; of Respondent to secure the necessary recording equipment or personnel needed as a consequence of the granting of his request to record or transcribe; and of the Chair to secure the presence of all Members of the Subcommittee and required recording equipment or personnel.

## PART F. Hearing and Deliberations

§ 7.01 Role of Chair. The Chair shall be primarily responsible for the conduct of the hearing, including the determination of whether there is good cause for a recess; provided, however, that any Member may request that a ruling by the Chair be submitted for a vote of the Subcommittee. Deviation from any procedures specified herein is permissible only upon vote of the Subcommittee and in the interest of fairness and for good cause shown.

§ 7.02 Spectators; Presence of Witnesses. Unless Respondent timely requested that the hearing be open, it shall be closed to all but the necessary parties. Witnesses may be present only while presenting evidence or testimony.

§ 7.03 Order and Nature of Hearing. The hearing should proceed in the following order: (1) determination by the Chair that the parties are present and ready to proceed, except that the Subcommittee may proceed in Respondent's absence upon a determination that Respondent has forfeited the right to be present by his or her willful absence; (2) a brief and nonargumentative opening statement by the Secretary; (3) a like opening statement by Respondent, unless deferred until completion of the Secretary's presentation; (4) presentation in any logical order by the Secretary of testimony, real or documentary evidence, and stipulations; (5) like presentation by Respondent; (6) closing argument by the Secretary, which may include argument concerning appropriate findings and Sanction; (7) like closing statement by Respondent. The Secretary and Respondent shall be permitted, at appropriate occasions during the hearing, to contest the veracity, reliability and relevance of any information, evidence or testimony presented and to suggest alternative conclusions which may be drawn from information presented. Upon conclusion of Respondent's presentation, the Secretary or Respondent may request an opportunity to present additional evidence. Such requests shall be granted by the Subcommittee only if the regular presentations have revealed an unanticipated need for such additional evidence. In the same circumstances, the Subcommittee may request the submission of additional evidence.

§ 7.04 Evidence. The formal rules of evidence shall not apply; the Subcommittee may consider all relevant testimony or real or documentary evidence. Objection to the presentation of any evidence or testimony shall be made at the time such evidence or testimony is proposed to be presented to the Subcommittee.

§ 7.05 Questioning of Witnesses. Subject to the direction of the Chair, the Secretary and Respondent and any Subcommittee member may question any Witness. The Chair shall assure that no Witness is abused or harassed.

§ 7.06 Deliberations. Upon completion of the hearing the Subcommittee shall promptly meet for closed and unrecorded deliberations. The Subcommittee shall first determine whether the conduct and Violation(s) charged were established by clear and convincing evidence. In accordance with federal law and university policy, the Subcommittee shall follow the preponderance of the evidence standard in instances of allegations of sexual harassment or sexual violence. Upon an affirmative finding, it shall then (or, if the two-stage hearing procedure is utilized, after further hearing) consider the imposition of an appropriate Sanction, taking into account aggravating and mitigating factors. The Subcommittee shall consider not only the seriousness of the Violation within the university and College of Law communities but also its seriousness in light of the professional requirements and responsibilities of lawyers. An affirmative vote of four (4) Members shall be necessary for imposition of the Sanction of dismissal.

## PART G. Reports and Records

§ 8.01 Limited Record Where No Formal Notice. If a Formal Notice is not made or is withdrawn, no record of the alleged violation will be made or preserved on the student's official transcript, but a record may be made or preserved solely for the purposes of the College of Law and to make required reports to the Senate Committee on Student Discipline.

§ 8.02 Record of Subcommittee Proceedings. A minute record of any preliminary review and of the Subcommittee's deliberations will be made and preserved. A verbatim transcript or recording
of the formal hearing shall be made and preserved. Upon request, a Respondent may at his or her own expense obtain a copy of the verbatim transcript or recording.

§ 8.03 Confidentiality. Access to the record of the hearing or of submissions and any record made in connection with a pre-hearing determination shall normally be limited to the Secretary, Respondent, the Subcommittee, the Senate Committee on Student Discipline, and Administrative Officers. This shall not limit in any way the Dean's authority and responsibility to provide information to appropriate authorities regarding a candidate's fitness for admission to the bar.

§ 8.04 Report of Dismissal. Upon a determination to dismiss all or part of the Formal Charge, the Subcommittee shall adopt a written statement explaining the basis for such action. The statement shall be signed by all members of the Subcommittee subscribing thereto; concurring or dissenting views may but need not be included. The Chair shall transmit a copy of this statement to the Dean and the Secretary, and shall arrange for Service of a copy upon Respondent.

§ 8.05 Report of Findings. After a hearing and deliberations, the Subcommittee shall adopt written findings which shall include a summary of the facts found by the Subcommittee, a statement specifying which Violation(s) charged the Subcommittee finds to have been committed by Respondent, and a statement specifying the Sanction imposed. Any special aggravating, mitigating or extenuating circumstances found by the Subcommittee may also be stated. The findings shall be signed by all Members of the Subcommittee subscribing thereto; concurring or dissenting views may but need not be included. The Chair shall transmit a copy of the findings to the Dean and the Secretary, and shall arrange for Service of a copy upon Respondent together with a copy of the Rules of the Senate Committee on Student Discipline relating to appeal procedures.

§ 8.06 Public Notice. After Respondent has been served with a copy of the findings or dismissal statement and, in the event of findings adverse to Respondent, after all university appeal procedures have been completed, the Subcommittee shall prepare and publish for the information of the College of Law community a public notice regarding the action taken. This notice shall not identify the Respondent by name, but shall specify: (1) the nature of each charged Violation disposed of; (2) whether the disposition was (a) dismissal, (b) a finding that the Violation was proved, or (c) a finding that the Violation was not proved; and (3) any

Sanction imposed. This notice may also summarize the specifications of each charged Violation disposed of, explain the basis of any dismissal, and summarize findings regarding whether the charged Violation(s) were proved.

# APPENDIX D

## Student Conduct Procedure for Allegations of non-Title IX Sexual Misconduct

In cases that are determined by the Title IX Coordinator, the Director of the Office for Student Conflict Resolution, or their designee to include an accusation that any student (including any student enrolled in the Carle Illinois College of Medicine, the College of Law, or the College of Veterinary Medicine) has engaged in Sexual Misconduct in an education program or activity of the university or where the discipline system accepts jurisdiction in those instances in which the university community's interest is substantially affected. In the event of a conflict between this Appendix and any other part of the Student Disciplinary Procedures, this Appendix shall prevail. Complainants and respondents will be treated equitably through these procedures.

**Section 1: Definitions**

a) Advisor of Choice. A person chosen by a Party to accompany the Party to meetings or proceedings related to the resolution process and to advise the Party on that process. The Advisor of Choice may be any person, including but not limited to a(n): friend, family member, mental health professional, certified victim's advocate, or attorney. The Parties may select whoever they wish to serve as their Advisor of Choice as long as the Advisor is eligible and available. Parties have the right to choose not to have an Advisor of Choice accompany them to meetings or proceedings. The university will directly communicate the case to the student. The student is responsible for updating their advisor and/or forwarding any correspondence to them.

b) Business Day or Day. Any weekday when university offices are open for official business.

c) Case. A situation of which the Office for Student Conflict Resolution is aware and in which a student respondent has been alleged to have violated the Student Code.

d) **Complainant** means:

1) A student who is alleged to have been subjected to conduct that could constitute Title IX Sexual Harassment; or

2) A person other than a student or employee who is alleged to have been subjected to conduct that could constitute sex discrimination under Title IX and who was participating or attempting to participate in a university education program or activity at the time of the alleged sex discrimination; or

3) An individual who is alleged to have been subjected to conduct that could constitute a violation of the Sexual Misconduct Policy.

e) Complaint. An oral or written request to the university that objectively can be understood as a request for the university to investigate and decide about alleged sex or

gender-based misconduct. The following persons have a right to make a complaint of sex discrimination, including complaints of sex-based harassment, requesting that the recipient investigate and make a determination about alleged discrimination under Title IX or this part: (i) A complainant; (ii) A parent, guardian, or other authorized legal representative with the legal right to act on behalf of a complainant; (iii) The Title IX Coordinator; (iv) With respect to complaints of sex discrimination other than sex-based harassment, in addition to the persons listed above, (A) Any student or employee; or (B) Any person other than a student or employee who was participating or attempting to participate in the recipient's education program or activity at the time of the alleged sex discrimination; or (C) Any person who alleges complaints of sex discrimination that meets the university's jurisdiction analysis in section 1.05

f) Director (or Executive Director). The Director of the Office for Student Conflict Resolution or their designee.

g) Evidence. Any information, including testimony, collected during an investigation that is relevant to the determination of whether the respondent has violated the Student Code. Information that solely addresses the character of any person will be considered only after a finding of responsibility, but prior to any sanctioning determination.

h) Evidence Packet. Any information, including testimony, collected during an investigation that is relevant to the determination of whether the respondent has violated the Student Code. Neither information that solely addresses the character of any person nor information about any complainant's prior sexual conduct with anyone other than the respondent (unless such information is offered to prove that someone other than the respondent is responsible for the alleged conduct) is evidence.

i) Investigative Report. A document created by the investigator that accurately summarizes the relevant and not otherwise impermissible evidence.

j) Investigator. The person responsible for investigating allegations of sexual misconduct on behalf of the university.

k) OSCR. The Office for Student Conflict Resolution.

l) Official Communication – communication between the parties and the Office for Student Conflict Resolution will happen via email between university email accounts. Paper copies delivered to the OSCR will be accepted. Should files become too big to share over email, all parties should notify an OSCR staff member. OSCR staff will create a U of I BOX folder (https://box.illinois.edu/) where the party will have the opportunity to transfer large files.

m) Panel. A group of members of the Subcommittee on sexual misconduct consists of three members. All Panels must include at least one student member.

n) Panel Chair (or Chair). A non-voting OSCR staff member or other non-voting trained designee assigned by the Director to run a hearing. The Director may enlist a staff member or designee who has extensive experience in student disciplinary procedures and training on sexual misconduct to serve as Chair should certain circumstances arise.

o) Party. Any person identified as a complainant or a respondent with respect to a given case.

p) Remedies. Measures provided, as appropriate, to a Complainant or any other person the university identifies as having had their equal access to the university's education program or activity limited or denied by sex discrimination. These measures are provided to restore or preserve that person's access to the university's education program or activity after the university determines that sex discrimination occurred.

q) Respondent. A student who is alleged to have violated the Student Code.

r) Sanction, Educational. An assignment, requirement, or task educationally related to a policy violation.

s) Sanction, Formal. A disciplinary status imposed by the university in response to a policy violation.

t) SCSD. The Senate Committee on Student Discipline. The SCSD is responsible for the student disciplinary procedures, involvement in hearing appeals for its subcommittees and the oversight of the adjudication of student discipline cases.

u) Sexual Misconduct. Any form of Prohibited Conduct under the Sexual Misconduct Policy.

v) Subcommittee on Sexual Misconduct. The group of faculty, staff, and students responsible for adjudicating cases that include allegations of sex or gender-based misconduct. This group is selected through an application process overseen by OSCR and approved by the SCSD.

w) Supportive Measures. Individualized services offered as appropriate, as reasonably available, without unreasonably burdening a complainant or respondent, not for punitive or disciplinary reasons, and without fee or charge to the Parties to: (1) or preserve that party's access to the university's education program or activity, including measures that are designed to protect the safety of the parties or the university's educational environment; or (2) Provide support during the grievance procedures or during the informal resolution process under the Sexual Misconduct Policy.

x) Witness. A person who has relevant information regarding the facts of the case.

**Section 2: Parties' (Respondent and Complainant) Rights**

a) Advisor. All parties may bring an advisor with them to any meeting with the investigator or any disciplinary proceeding to which they are invited. This individual may communicate nondisruptively with their student during such proceedings but may not speak for their student or otherwise directly participate. An advisor who fails to follow these instructions or behaves disruptively may be asked to leave. The university will directly communicate the case to the student. The student is responsible for updating their advisor and/or forwarding any correspondence to them. If someone other than the advisor is approved to participate for one party, the other party (ies) should have the same opportunity.

b) Appeal. All parties may appeal the investigator's decision to dismiss the complaint or any allegation therein or the Panel's decision to the SCSD. This process is described in §9 below.

c) Disability Accommodations. A qualifying party has the right to reasonable accommodations during any disciplinary process or proceeding in accordance with §1-110 of the *Student Code*.

d) Evidence Review. All parties will have the opportunity to inspect and review all evidence obtained as part of the investigation that is directly related to the allegations raised in the complaint, including the evidence which will not be relied upon in reaching a determination regarding responsibility and inculpatory or exculpatory evidence whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to the conclusion of the investigation.

e) Interpreter. Either party may also bring an interpreter with them to any meeting with the investigator or any disciplinary proceeding to which they are invited, provided that this individual is also not a witness in the investigation. An interpreter who behaves disruptively may be asked to leave. The use of an interpreter does not preclude the party's ability to have an advisor present.

f) Notice. All parties will receive written notification of the allegations and of any meetings or proceedings they are expected to attend. Notice is deemed given immediately when hand delivered or sent to the parties' university email address, or on the following business day when mailed.

g) Objectivity. All disciplinary decisions will be based on an objective evaluation of evidence, including both inculpatory and exculpatory evidence not otherwise impermissible. No disciplinary decisions, including credibility determinations, will be based on a person's status as a complainant, respondent, or witness or on a person's membership in a protected class as listed in the university's Nondiscrimination Policy.

h) Participation. All parties will have an opportunity to identify and present witnesses, including expert witnesses; to provide information directly related to the allegations, including inculpatory and exculpatory evidence; and to participate in any scheduled formal hearing. In addition, the respondent may refuse to provide a requested statement or to answer a question posed to them.

i) Supportive Measures. All parties has the right to request supportive measures. The Title IX Coordinator or their designee is responsible for coordinating the effective implementation of supportive measures, but the respondent may directly request that the investigator issue a no contact directive.

j) Timely Investigation and Decision. Any investigation of a complaint will begin promptly and proceed in a timely manner. The parties will receive a timely written decision following a formal hearing or appellate review.

**Section 3: Evidence**

a) An objective evaluation of all evidence that is relevant, and not otherwise impermissible, including both inculpatory and exculpatory evidence, is required.

b) As defined above and for the purposes of this appendix, evidence is any information, including testimony, that is directly related to the allegations raised in the complaint. The investigator and the Panel have the right to reject or disregard information that is not relevant or is otherwise impermissible when compiling the Evidence Packet, creating the Investigative Report, dismissing the complaint, or reaching a determination regarding responsibility.

c) During cross-examination, as described in §7 below, the Chair will only allow relevant questions, where a relevant question is one that seeks relevant evidence.

d) The following types of evidence will be excluded, and questions seeking these types of evidence are impermissible (i.e., must not be accessed or considered, except by OSCR to determine whether an exception below applies, must not be disclosed, and must not otherwise be used), regardless of whether they are relevant:

1. Evidence that is protected under a privilege as recognized by Federal or State law or evidence provided to a confidential employee, unless the person to whom the privilege or confidentiality is owed has voluntarily waived the privilege or confidentiality;
2. A party's or witness's records that are made or maintained by a physician, psychologist, or other recognized professional or paraprofessional in connection with the provision of treatment to the party or witness, unless the recipient obtains that party's or witness's voluntary, written consent for use in this procedure; and
3. Evidence that relates to the complainant's sexual interests or prior sexual conduct, unless evidence about the complainant's prior sexual conduct is offered to prove that someone other than the respondent committed the alleged conduct or is evidence about specific incidents of the complainant's prior sexual conduct with the respondent that is offered to prove consent to the alleged sex or gender-based misconduct. The fact of prior consensual sexual conduct between the complainant and respondent does not by itself demonstrate or imply the complainant's consent

to the alleged Sexual Misconduct or preclude determination that Sexual Misconduct occurred.

**Section 4: Investigation of a Complaint**

(a) Intake and Review. OSCR will oversee investigations of complaints against student respondents. Upon receipt of a complaint, the Director will assign a primary investigator (or investigator) to conduct the investigation. The investigator may be assisted by a secondary investigator (or secondary) as necessary. The investigator will first attempt to interview the complainant to determine the precise nature of the allegations.

(b) Consolidation of Complaints. OSCR may consolidate complaints as to allegations against more than one respondent, or by more than one complainant against one or more respondents, or by one party against the other party, where the allegations arise out of the same facts or circumstances. When a case involves more than one complainant or more than one respondent, references in this appendix to the singular "party," "complainant," or "respondent" include the plural, as applicable.

(c) Dismissal of the Complaint or Any Allegations Therein.

(i) OSCR may dismiss a complaint, or any allegations of sexual misconduct made through its grievance procedures therein if, at any time during the investigation or hearing, it is determined that:

(1) OSCR is unable to identify the respondent after taking reasonable steps to do so.

(2) The respondent is not participating in the university's education program or activity and is not employed by the university;

(3) The complainant voluntarily withdraws any or all of the allegations in the complaint, the Title IX Coordinator declines to initiate a complaint, and the Director, in consultation with the Title IX Coordinator, determines that, without the complainant's withdrawn allegations, the conduct that remains alleged in the complaint, if any, would not constitute sexual misconduct even if proven; or

(4) The recipient determines the conduct alleged in the complaint, even if proven, would not constitute sexual misconduct. Prior to dismissing the complaint, OSCR must make reasonable efforts to clarify the allegations with the complainant.

(ii) Upon any such dismissal, OSCR staff will promptly send written notification of the dismissal and the rationale for the dismissal simultaneously to the Complainant (and the Respondent if the Respondent has been notified of the allegations). The notification will include appeal options and instructions and supportive measures information for the parties as appropriate.

(iii) The dismissal of a complaint or any allegations therein may be appealed by either party to the SCSD in accordance with appeal procedures in §8.

(d) Allegation Notice. The investigator will issue a written allegation notice (to each party's university email address, if they have one) that informs the respondent and the complainant of the following:

(i) A description of the allegation, including the conduct alleged to constitute prohibited conduct, the date (if known) and location (if known), of the alleged incident(s).

(ii) The identity (if known) of the parties involved in the incident(s).

(iii) The section(s) of the Student Code that the respondent has been accused of violating.

(iv) Informal resolution procedures (if applicable)

(v) A link to these procedures or an attached copy of these procedures.

(vi) A statement that the parties may have an advisor of their choice who may be, but is not required to be, an attorney.

(vii) A statement that the respondent is presumed not responsible for the alleged sexual misconduct until a determination is made at the conclusion of this process. Prior to such a determination, the parties will have an opportunity to present relevant and not otherwise impermissible evidence to a trained, impartial Panel.

(viii) A statement that the parties are entitled to an equal opportunity to access the relevant and not otherwise impermissible evidence in accordance with §6 below.

(ix) Instructions and a deadline for the respondent to schedule a meeting with the investigator. This meeting should occur within ten business days of the allegation notice, unless a conflict between the investigator's availability and the respondent's academic schedule requires the meeting to be delayed further.

(x) A statement that the university prohibits retaliation, knowingly making false statements to university officials, and knowingly submitting false information to university officials.

(xi) Notification that parties and advisors are prohibited from disclosing information obtained by OSCR through this process, to the extent that information is the work product of OSCR (meaning it has been produced, compiled, or written by OSCR for purposes of its investigation and resolution of a Complaint), without authorization.

(e) Respondent & Complainant Interview. The investigator will attempt to interview the respondent in a timely manner (as described above). If the respondent fails to respond to the allegation notice or refuses to meet with the investigator, the investigation will continue until completion.

(f) Evidence Collection and Witness Interviews. Both parties will be given the opportunity to provide supporting information and documentation and to identify witnesses. The investigator will review all submitted materials and will attempt to interview all

witnesses. The investigator may also seek additional information, documentation, and witnesses from other sources.

(g) Follow-up Interviews. The investigator may request additional meetings with the respondent and any complainant to discuss any information gathered during the investigation. Parties will be given written notice of the date, time, location, participants, and purpose of all meetings or proceedings with sufficient time for the party to prepare to participate.

(h) Privilege. The investigator and the Panel will not require, allow, rely upon, or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege.

(i) Updates. As deemed appropriate by the investigator, OSCR staff will provide both the respondent and the complainant with periodic status updates during the investigation, the review process, and the appeal process.

(j) Ongoing Notice. If, during an investigation, the investigator decides to investigate allegations not included in the original allegation notice, they will issue a new allegation notice in accordance with §4(d) above (with the possible exception of the instruction to schedule a meeting).

(k) Cooperation with Law Enforcement. If the incident under investigation has also been reported to the police, the investigator will contact the police for any information they are willing to share and may interview officers, detectives, etc. as part of the OSCR investigation. At the request of law enforcement and so as not to interfere with active police investigations, the investigator may delay interviewing specific individuals for short periods of time at the discretion of the Executive Director. However, the OSCR and police investigations are separate processes. As such, they follow different procedures, rules, and regulations, and the outcome of one does not determine the outcome in the other.

(l) Reasonable Delay of Notice. The university may reasonably delay providing the notice of allegations to address reasonable concerns for the safety of any person as a result of issuing the notice of allegations. Reasonable concerns will be based on an individualized safety and risk analysis which evaluates the severity and imminence of a threat to the safety of any person arising from the allegations of sex or gender-based misconduct.

(m) Recordings. Interviews cannot be recorded without express written consent by all individuals involved, and no unauthorized recording is permitted by anyone participating in the investigative interviews. Parties and witnesses may take notes during investigation meetings. Requests for recording of an interview must be submitted with the rationale for consideration to the Director or their designee at conflictresolution@illinois.edu.

(n) Investigator Review of Evidence. The investigator will review all evidence gathered through the investigation and determine what evidence is relevant and what evidence is impermissible regardless of relevance.

**Section 5: Review of Evidence**

(a) Review of Evidence by the Parties. At the conclusion of the investigation, the investigator will compile all evidence into an Evidence Packet and send this packet (in either electronic or hard copy format, at the investigator's discretion) to each party and the party's advisor, if any.

(b) The Evidence Packet will be available at the hearing to give each party an equal opportunity to refer to the evidence during the hearing, including for purposes of cross-examination. The parties will have five business days from the initial release to review and respond to the evidence packet.

(c) Written Responses to the Evidence Packet. The parties will have five business days to review the Evidence Packet and to submit a written response. The investigator is not required to accept documentary evidence submitted after this deadline or fact witnesses identified after this deadline.

(d) Parties must submit all written, tangible, or documentary evidence and identify all fact witnesses during the investigation and no later than the conclusion of evidence review, provided such information was available to the submitting party. If written, tangible, or documentary evidence or a witness's identity that was not available to a party prior to the conclusion of evidence review becomes available prior to, or on the day of, the hearing, the party should immediately submit this information to OSCR staff. The party should also document why this new information should be included after the documented deadline. The Chair will then determine whether to provide the information to the other party and their advisor, providing them with sufficient time for review, or to send the complaint back to the investigator for further investigation. The Panel will assign appropriate weight to testimonial evidence that is provided at the hearing but was not previously provided to the investigator.

**Section 6: Investigative Report**

(a) Investigative Report Creation. As soon as is practicable after the evidence review period, the investigator will release an Investigative Report that fairly summarizes the procedural steps taken in the investigation and the relevant evidence. If any party has submitted a timely written response to the Evidence Packet, the investigator will consider that response when completing the Investigative Report.

(b) Investigative Report Distribution and Review. The investigator will provide an electronic copy of the Investigative Report to both the respondent and the complainant and their advisors, if any, and notify them that they may submit a written response to the report

no later than five business days after the report has been sent. Any written responses will be shared with the subcommittee panel.

**Section 7: Formal Hearing**

(a) Appointment of Panel. The Director will appoint a Panel of three voting members, including at least one student member of the Subcommittee on Sexual Misconduct (according to their availability and the frequency of their participation) and designate a staff member with extensive training in sexual misconduct to serve as the non-voting Chair. Before the membership of this Panel is finalized, OSCR will provide both the respondent and the complainant with a list of all members of the Subcommittee on Sexual Misconduct. At this point, the parties may challenge the objectivity of any person on this list. Such a challenge must be based on an identified bias (e.g., a prior relationship between the party and the member) or an identified conflict of interest. The Director will consider these challenges when making a final decision regarding Panel membership.

(b) Panel Review of Materials. OSCR staff will provide the members of the Panel with electronic access to the Investigative Report, Evidence Packet, and any written responses from the parties and give them sufficient time to review these materials thoroughly.

(c) Scheduling of the Hearing. OSCR staff will schedule a formal hearing before the Panel to take place at least five business days after the Investigative Report was sent to the parties. The hearing will typically take place in an online format using technology that enables the participants to see and hear each other simultaneously.

(d) Notice of the Hearing. OSCR staff will notify both the respondent and the complainant by email of the date, time, format, location (if applicable), participants (including invited witnesses), and purpose of the hearing at least five business days in advance.

(e) Presumption of No Violation. The respondent is presumed not to be responsible for the alleged conduct until a final determination regarding responsibility has been made at the conclusion of this process.

(f) Hearing Rules

(1) The hearing will be closed to the public.

(2) The Chair may exclude from the hearing any person who disrupts the orderly process of the hearing but will do so only after first issuing a warning. The Chair need not consider this cause to reschedule the hearing or continue the hearing at a later date.

(3) The hearing may proceed (at the Chair's discretion) even if the respondent, the complainant, any advisor, or any witness fails to appear, provided the parties have been notified in accordance with §7(d) above.

(4) The Evidence Packet will be available at the hearing to give each party an equal opportunity to refer to the evidence during the hearing, including for purposes of cross-examination.

(5) Parties must submit all written, tangible, or documentary evidence and identify all fact witnesses during the investigation and no later than the conclusion of evidence review, provided such information was available to the submitting party. If written, tangible, or documentary evidence or a witness's identity that was not available to a party prior to the conclusion of evidence review becomes available prior to, or on the day of, the hearing, the party should immediately submit this information to OSCR staff. The party should also document why this new information should be included after the documented deadline. The Chair will then determine whether to provide the information to the other party and their advisor, providing them with sufficient time for review, or to send the complaint back to the investigator for further investigation. The Panel will assign appropriate weight to testimonial evidence that is provided at the hearing but was not previously provided to the investigator.

(6) Persons who have no relevant evidence to provide may not participate as witnesses.

(7) Any witness who is not also serving as an advisor may only participate in the hearing while providing evidence or answering questions.

(8) The hearing will be audio recorded by OSCR staff. To protect the confidentiality of the process and the privacy of individuals involved, no other participants are permitted to record the hearing. The Panel's deliberation is not audio recorded. Any party may request access to review this recording at any time during the seven years following its creation (subject to any procedures or limitations OSCR has in place at the time the review is requested).

(9) The investigator may attend the hearing but will leave the hearing prior to deliberation.

(10) At the Chair's discretion, an employee of the Office of the Dean of Students may attend the hearing and the deliberation to provide administrative support to the Panel. This person will not participate in questioning or offer any opinions during deliberation.

(11) The Panel may question parties and witnesses to adequately assess a party's or witness's credibility to the extend credibility is both in dispute and relevant to evaluate in one or more allegations of sex-based harassment. In questioning, the Panel will ask relevant and not otherwise impermissible questions and follow-up questions of parties and witnesses; allow each party to propose questions such questions that the party wants asked of any part or witness; allow the chair to instruct a party or witness to not answer a question

(12) The Chair may instruct a complainant, respondent, or witness not to answer a question asked during cross-examination (or at any other time) if that question has already been answered or is irrelevant, provided the Chair explains their decision. Prior to deciding on a question's relevance, the Chair may ask the questioner to explain the question's relevance. The Chair may also instruct the questioner to reword a relevant question that is asked in a manner that, in the Chair's opinion, is intended to disparage, intimidate, or otherwise harass the individual being questioned.

(13) The Panel may consider statements made by parties or witnesses that are otherwise permitted under these procedures in reaching a determination regarding responsibility even if those parties or witnesses do not participate in cross-examination at the hearing. Furthermore, the Panel may not draw any inference about the determination regarding responsibility based solely on a party's or witness's absence from the hearing or refusal to answer questions.

(14) At the request of the respondent or the complainant, OSCR staff will make arrangements for the parties to participate in the hearing while in different locations using technology enabling the Panel members and the parties to simultaneously see and hear any person who is answering questions.

(15) The Chair will identify at least one break of no fewer than ten minutes for every two hours of the hearing. The respondent and the complainant may also request additional breaks as needed, provided the number of requests is not disruptive to the orderly conduct of the hearing. The Chair will decide whether to grant any such requests.

(16) The Chair may set a reasonable time frame for the hearing and reasonable time limits for each step of the hearing but may allow deviations, provided such allowances are fair and equitable. After consultation with the other Panel members, the Chair may also decide to continue the hearing to another day for good cause. Acceptable reasons include, but are not limited to, the need for additional investigation, the need to seek additional witness testimony, or the inability to complete all required steps of the hearing process within a reasonable time frame. Unless waived by both parties, notification of the date, time, and location must occur at least five business days in advance, but prior notification of possible continuance dates will satisfy this requirement.

(17) The Chair may set additional rules for the hearing as needed, if none conflicts with any provision of this appendix.

(g) Hearing Procedures: Fact Finding

(1) Under the direction of the Chair, all Panel members and participants will introduce themselves by name and role.

(2) The Chair will briefly describe the order of the hearing.

(3) The Chair will invite the investigator to make a statement (if they choose) regarding the investigation, and Panel members may question the investigator. The respondent and the complainant will then have an opportunity to question the investigator through the chair.

(4) The Chair will invite the complainant to make an opening statement regarding the allegations. This statement should last no longer than ten minutes unless the Chair approves a greater duration. The Panel members will then question the complainant, after which the respondent will have an opportunity to question the complainant through the chair.

(5) The Chair will invite the respondent to make an opening statement regarding the allegations. This statement should last no longer than ten minutes unless the Chair approves a greater duration. The Panel members will then question the respondent, after which the complainant will have an opportunity to question the respondent through the chair.

(6) The Panel Chair will invite each participating witness into the room, one at a time, to answer questions from Panel members. For each witness, the respondent and the complainant will have an opportunity to ask questions through the chair.

(7) Panel members must not draw an inference about whether sex-based harassment occurred based solely on a party's or witness's refusal to respond to such questions.

(8) Panel members will have a final opportunity to question the complainant, the respondent, and the investigator regarding the allegations.

(9) The complainant will have a final opportunity to question the respondent through the chair. And the respondent will have a final opportunity to question the complainant through the chair.

(10) The Chair will invite the complainant to make a closing statement regarding the allegations. Each statement should last no longer than five minutes.

(11) The Chair will invite the respondent to make a closing statement regarding the allegations. This statement should last no longer than five minutes.

(12) The Chair will excuse the respondent, the complainant, and the investigator from the hearing, and the Panel will enter into closed deliberation to find facts and make a determination regarding responsibility. The Panel will make its decisions by simple majority vote and will apply the preponderance of the evidence standard.

(h) Hearing Procedures: Deliberation

(1) If the respondent(s) is found not responsible, the deliberation is complete.

(2) If a responsibility finding is made, the Director or designee will provide any written statement of desired outcome, character statements, or impact

statements. If a student has disciplinary history that was not deemed relevant to the allegations, that will also be shared after a responsibility finding is made. The Panel will determine an appropriate formal sanction (see §2.09(b) of the Student Disciplinary Procedures) for the respondent. The Panel may also issue educational sanctions and apply additional conditions or restrictions set forth in §2.09(c) of the Student Disciplinary Procedures.

(i) Notice of Action Taken. OSCR staff will provide simultaneous email notification of the Panel's decision to the respondent and the complainant within five business days. This notification will also include:

(1) A statement of the allegations considered by the Panel, including any allegations of sex or gender-based misconduct;

(2) A description of the procedural steps taken from the receipt of the complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;

(3) Findings of fact supporting the determination regarding responsibility;

(4) Conclusions regarding the application of the *Student Code* and other relevant policies to the facts;

(5) A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility;

(6) A list of any formal sanctions, educational sanctions, or behavioral restrictions imposed;

(7) If there are reasonable concerns to the safety of any person as a result of providing this notice of action taken, OSCR may reasonably delay providing written notice of allegation or outcome to address the safety concern appropriately. Reasonable concerns must be based on an individualized safety and risk analysis.

(8) Information regarding the parties' right to appeal the Panel's decision.

(j) Finality of Decisions Not Appealed. The Panel's decision will become final after five business days from the date of notice of the Panel's decision unless either party submits a timely Notice of Appeal. If OSCR dismisses the complaint or any allegations therein, then that decision will likewise become final after five business days from the date of the notice of the decision unless either party submits a timely Notice of Appeal.

(k) OSCR will not discipline a party, witness, or others participating in an investigation or hearing process for making a false statement <u>based solely on the recipient's determination</u> whether sex discrimination occurred.

**Section 8: Appeal Procedures**

(a) Right to Appeal. Both parties have the right to appeal the Panel's decision or the decision of the investigator to dismiss a complaint or any allegations therein.

(b) Grounds for Appeal. The appellant must base the appeal exclusively on one or more of the following grounds:

(1) A procedural irregularity occurred that would change the outcome.

(2) New evidence that would change the outcome and that was not reasonably available when the determination whether sexual misconduct occurred or dismissal was made.

(3) The Title IX Coordinator, investigator(s), or Panel members had a conflict of interest or bias for or against complainants or respondents generally or any individual complainant or respondent that would change the outcome of the matter.

(4) Any sanctions imposed by the Panel were not appropriate for the violation(s) for which the respondent was found responsible.

(c) Notice of Appeal. The appellant must submit a Notice of Appeal and all supporting documentation to the Office for Student Conflict Resolution within five business days of the date of notice of the Panel's decision (or of the investigator's decision to dismiss the complaint or any allegations therein).

(d) Content of Notice of Appeal. The Notice of Appeal must contain at least the following: (1) specific grounds for appeal; (2) specific outcome requested; and (3) the appellant's reasons in support of the grounds identified and the outcome requested. The appellant must submit the Notice of Appeal in writing, and the appellant must either sign the Notice of Appeal or submit it by email to OSCR from their university email address (if applicable). Oral appeals are not accepted.

(e) Notice to the Parties of Any Appeal and Opportunity to Respond. If only one party submits a Notice of Appeal, OSCR will notify the other party of the submission and grant the other party access to all submitted documentation. The other party will have five business days from the date of notification to submit a written response to be considered as part of the appeal. If both parties submit a Notice of Appeal, both parties will be informed, granted access to all submitted documentation, and given five business days to submit a written response. The written response may be a statement in support of, or challenging, the outcome.

(f) Sanctions Held in Abeyance Pending Appeal. Any formal or educational sanctions imposed will be held in abeyance automatically during the period in which the appeal may be filed and, once an appeal is filed, until the committee reaches a decision on the appeal. Behavioral restrictions such as no contact directives, however, remain in place pending the appeal.

(g) Appellate Review.

(1) The Chair of the SCSD or their designee will identify three SCSD members, of which one must be a faculty member and one a student, to decide the appeal. These individuals will constitute the Appeal Committee. OSCR will ensure that the Appeal Committee members did not take part in an investigation of the allegations or dismissal of the complaint. Before the membership of this Appeal Committee is finalized, OSCR will provide both the respondent and the complainant with a list of all members of the SCSD. At this point, the parties may challenge the objectivity of any person on this list. Such a challenge must be based on an identified bias (e.g., a prior relationship between the party and the member) or an identified conflict of interest. The Chair of the SCSD or their designee will consider these challenges when making a final decision regarding Appeal Committee membership. If the Chair of the SCSD does not serve on the Appeal Committee, they or their designee will select a faculty member to chair the Appeal Committee.

(2) The Appeal Committee will review all materials that were provided to the Panel, the recording of the hearing, the Notice(s) of Appeal, any documentation provided in support of the Notice(s) of Appeal, and any responses to the Notice(s) of Appeal.

(3) The Appeal Committee will meet to consider the appeal and will be advised by an OSCR staff member who did not serve as an investigator; this OSCR staff member will not be allowed to vote. Neither the respondent nor the complainant will be allowed to attend the deliberations of the Appeal Committee.

(h) Deliberations. The Appeal Committee will decide by simple majority vote whether the appellant has met any of the grounds for appeal. The decision of the Appeal Committee is final and binding on all parties.

(i) Authority of the Appeal Committee. If the Appeal Committee determines that one (or more) of the grounds for appeal has been met, the Appeal Committee may:

(1) Affirm the decision;

(2) Modify the decision;

(3) Remand the case to the original investigator or Panel (with instruction) or to a new investigator or Panel (with or without instruction) for a new decision; and/or

(4) Modify any sanctions or restrictions imposed.

(j) Notice of Decision. OSCR staff will provide simultaneous email notification of the Appeal Committee’s decision, including a rationale for the result, to the parties within five business days of that decision.

**Section 9: Procedural Time Frames**

(a) The anticipated duration of the investigation and hearing process, from the receipt of the complainant to the written notification of the Panel's decision, is no more than 60 business days, but the investigator may extend this timeframe in increments of 10 business days for good cause provided the investigator or their designee notifies both parties in writing of the delay and the reason for the delay. Acceptable reasons include, but are not limited to, the complexity of the investigation, the number of witnesses, the need for language assistance or accommodation of disabilities, and the possibility of interruption by break periods.

(b) The anticipated duration of the appeal process, from the written notification of the Panel's decision to the notification of the Appeal Committee's decision, is no more than 25 business days, but the Director may extend this timeframe in increments of 10 business days for good cause provided the Director or their designee notifies both parties in writing of the delay and the reason for the delay.

(c) Any request for a reasonable extension of timeframes provided with rationale will be made to the Director of OSCR by submission to conflictresolution@illinois.edu. Any request will be judged on a case by-case basis for good cause with notice to the parties that includes the reason for the delay.

**Section 10: Petitions to the Subcommittee on Sexual Misconduct**

Persons who have been dismissed from the university for sexual misconduct may petition the Subcommittee on Sexual Misconduct for permission to re-enter the university in accordance with the procedures described in Article IV, Section 4.02.

If the complainant is still affiliated with the university, they will be offered the opportunity to participate in the petition hearing. Any participating complainant will meet with the petitioning panel prior to the respondent entering the hearing.

**Section 11: Additional Responsibilities of the Title IX Coordinator in the Student Discipline System**

(a) Advisory Role of the Title IX Coordinator. The Director and the investigators may seek advice from the Title IX Coordinator or their designee regarding investigations, supportive measures, corrective action remedies, training, and compliance with Title IX and other federal, state, or local laws and regulations.

(b) Title IX Coordinator Determination of Complaint Initiation. In the absence of a complaint or the withdrawal of any or all of the allegations in a complaint, and in the absence or termination of the informal resolution process, the Title IX Coordinator determines whether to initiate a complaint of sex discrimination, including sex-based harassment, under these procedures.

 (1) The Title IX Coordinator will consider several factors in determining whether to move forward with a complaint, including:

1. Whether the allegations, as described, could constitute sex discrimination or sex-based harassment under the Sexual Misconduct Policy;
2. The complainant's request not to proceed with the initiation of a complaint;
3. The complainant's reasonable safety concerns regarding initiation of a complaint;
4. The risk that additional acts of sex discrimination would occur if a complaint is not initiated;
5. The severity of the alleged sex discrimination, including whether the discrimination, if established, would require the removal of a respondent from campus or imposition of another disciplinary sanction to end the discrimination and prevent its recurrence;
6. The age and relationship of the parties, including whether the respondent is an employee of the university;
7. The scope of the alleged sex discrimination, including information suggesting a pattern, ongoing sex discrimination, or sex discrimination alleged to have impacted multiple individuals;
8. The availability of evidence to assist a decisionmaker in determining whether sex discrimination occurred; and
9. Whether the recipient could end the alleged sex discrimination and prevent its recurrence without initiating these procedures.

(2) If a complaint is initiated, the complainant will be notified prior to doing so and the Title IX Coordinator or designee will appropriately address any reasonable concerns about the complainant's safety or the safety of others, including by providing supportive measures.

(c) Ensure No Continuation or Recurrence of Sex Discrimination. Regardless of whether a complaint is initiated or dismissed, The Title IX Coordinator or designee may take other appropriate prompt and effective steps to ensure that sex discrimination does not continue or recur within the university's education program or activity.

(d) Supportive Measures. The University of Illinois Urbana-Champaign will offer and implement appropriate and reasonable supportive measures to the Parties upon a Report or a Complaint of prohibited conduct under the Sexual Misconduct Policy.

(i) The Title IX Coordinator or designee promptly makes supportive measures available to the Parties upon receiving a Report or a Complaint. At the time that supportive measures are offered, if a Complaint has not been filed, the university will inform the Complainant, in writing, that they may file a Complaint with the university either at that time or in the future. The Title IX Coordinator or designee will work with a party to ensure that their wishes are considered with respect to any planned and implemented supportive measures.

(ii) The university will maintain the confidentiality of the supportive measures, provided that confidentiality does not impair the university's ability to provide those supportive measures. The university will act to ensure as minimal an academic/occupational impact on the Parties as possible. The university will implement measures in a way that does not unreasonably burden any party.

(iii) The range of supportive measures, as well as the process to request review of supportive measures, is available on wecare.illinois.edu/policies/campus/interim.

(iv) Violations of no contact orders or other restrictions may be referred to appropriate student or employee disciplinary/grievance processes for enforcement or added as collateral misconduct allegations to an ongoing Complaint under the Sexual misconduct Policy.

(v) If the complainant or respondent is a postsecondary student with a disability, the Title IX Coordinator may consult, as appropriate, with DRES to determine how to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, in the implementation of supportive measures.

(vi) If the complainant or respondent is an elementary or secondary student with a disability, the Title IX Coordinator or their designee must consult with one or more members, as appropriate, of the student's Individualized Education Program (IEP) team, 34 CFR 300.321, if any, or one or more members, as appropriate, of the group of persons responsible for the student's placement decision under 34 CFR 104.35(c), if any, to determine how to comply with the requirements of the Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, in the implementation of supportive measures.

(e) Remedies or Other Actions. Following the conclusion of the disciplinary process, if there is a determination that sex discrimination, sex-based harassment, or retaliation occurred, in addition to any sanctions implemented through the disciplinary process, the Title IX Coordinator or their designee may implement additional remedies or actions with respect to the Complainant and/or other persons identified as having had equal access to the university's education program or activity limited or denied by sex discrimination. Remedies or actions help ensure that sex discrimination does not continue or recur within the university's education program or activity.

(i) These remedies/actions may include, but are not limited to:

1. Referral to counseling and health services
2. Referral to the Employee Assistance Program or Faculty Staff Assistance and Well-Being Services
3. Course and registration adjustments, such as retroactive withdrawals
4. Education to the individual and/or the community
5. Permanent alteration of housing assignments
6. Permanent alteration of work arrangements for employees
7. SafeWalks

8. Climate surveys
9. Policy modification and/or training
10. Implementation of long-term contact limitations between the Parties
11. Implementation of adjustments to academic deadlines, course schedules, etc.

(ii) At the discretion of the Title IX Coordinator or their designee, certain supportive measures may also be provided to the Parties even if no Policy violation is found.

**Section 12: Privacy**

(a) Any proceeding, meeting, or hearing held as part of the process described in this appendix will protect the privacy of the participating parties and witnesses in accordance with applicable law.

(b) The university will not disclose the identity of the respondent, the complainant, or witnesses except as necessary to implement supportive measures and accommodations, investigate the allegations, conduct any hearing or judicial proceeding, or when provided by state or federal law.

(c) Notification that parties and advisors are prohibited from disclosing information obtained by OSCR through this process, to the extent that information is the work product of OSCR (meaning it has been produced, compiled, or written by OSCR for purposes of its investigation and resolution of a Complaint), without authorization. Parties and advisors are prohibited from publicly disclosing institutional work products that contain a party or witness's personally identifiable information without authorization or consent. Doing so can be subject to discipline under the University of Illinois Code of Conduct or the University of Illinois Student Code.[1]

**Section 13: Required Training and Conflicts of Interest and Bias**

(a) All investigators, Panel members, SCSD members, the Title IX Coordinator and their designees, and any other individual responsible for implementing this Procedure for Allegations of Sexual misconduct ("procedure") must receive annual training in compliance with federal and state laws and regulations.

(b) Any individual materially involved in the administration of this procedure, including the Title IX Coordinator, Investigator, OSCR staff member, Panel member, or SCSD member, may neither have nor demonstrate a conflict of interest or bias for a Party generally, or specifically.

(c) Any individual materially involved in the administration of this procedure who has a conflict of interest with respect to a specific case or party, or complainants or respondents generally, must recuse themselves from any role in that case.

[1] Disclosures of such information and evidence for purposes of administrative proceedings or litigation related to the complaint of Sex Discrimination or Sex-Based Harassment is authorized.

**Section 14: Record-Keeping**

(a) OSCR will maintain for a period of at least seven years records of the following:

(1) The investigation, including any determinations regarding responsibility and any sanctions or behavioral restrictions imposed;

(2) The recording of the formal hearing;

(3) Any appeal and the result therefrom; and

(4) Any remedies provided to the complainant unless records of such remedies are maintained elsewhere, as in the Title IX Office.

(5) All materials used to provide training to OSCR investigators, Panel members, SCSD members, and any other persons responsible for implementing these procedures. These training materials will be available upon request for inspection by members of the public.

## APPENDIX E

### Student Conduct Procedure for Allegations of Title IX Sexual Misconduct

In cases that are determined by the Title IX Coordinator or their designee to include an accusation that any student (including any student enrolled in the Carle Illinois College of Medicine, the College of Law, or the College of Veterinary Medicine) has engaged in Title IX Sexual Harassment in an education program or activity of the university against a person in the United States, the following provisions shall also apply. In the event of a conflict between this Appendix and any other part of the Student Disciplinary Procedures, this Appendix shall prevail.

If the regulations implementing Title IX at 85 Fed. Reg. 30026, 30026-30579 are enjoined or invalidated by a Federal Court with jurisdiction over the university or reversed or replaced by any agency with sufficient authority, the process described in Articles II and III will immediately begin to apply to all reports and complaints of sexual misconduct, including Title IX Sexual Harassment, and this appendix will immediately be inoperative unless and until any such injunction, invalidation, reversal, or replacement is overturned.

**Section 1: Definitions**

A. Advisor of Choice. A person chosen by a Party to accompany the Party to meetings or proceedings related to the resolution process and to advise the Party on that process. The Advisor of Choice may be any person, including but not limited to a(n): friend, family member, mental health professional, certified victim's advocate, or attorney. The Parties may select whoever they wish to serve as their Advisor of Choice as long as the Advisor is eligible and available. Parties have the right to choose not to have an Advisor of Choice accompany them to meetings or proceedings. The university will directly communicate the case to the student. The student is responsible for updating their advisor and/or forwarding any correspondence to them.

B. Business Day. Any weekday when university offices are open for official business.

C. Case. A situation of which the Office for Student Conflict Resolution is aware and in which a student respondent has been alleged to have violated the Student Code.

D. **Complainant** means:
   (1) A student who is alleged to have been subjected to conduct that could constitute Title IX Sex-Based Harassment; or

   (2) A person other than a student or employee who is alleged to have been subjected to conduct that could constitute sex discrimination under Title IX and who was participating or attempting to participate in a university education program or activity at the time of the alleged sex discrimination; or

(3) An individual who is alleged to have been subjected to conduct that could constitute a violation of the Sexual Misconduct Policy.

E. Complaint. An oral or written request to the university that objectively can be understood as a request for the university to investigate and decide about alleged sex or gender-based misconduct. The following persons have a right to make a complaint of sex discrimination, including complaints of sex-based harassment, requesting that the recipient investigate and make a determination about alleged discrimination under Title IX or this part: (i) A complainant; (ii) A parent, guardian, or other authorized legal representative with the legal right to act on behalf of a complainant; (iii) The Title IX Coordinator; (iv) With respect to complaints of sex discrimination other than sex-based harassment, in addition to the persons listed above, (A) Any student or employee; or (B) Any person other than a student or employee who was participating or attempting to participate in the recipient's education program or activity at the time of the alleged sex discrimination; or (C) Any person who alleges complaints of sex discrimination that meets the university's jurisdiction analysis in section 1.05

F. Director (or Executive Director). The Director of the Office for Student Conflict Resolution or their designee.

G. Evidence. Any information, including testimony, collected during an investigation that is relevant to the determination of whether the respondent has violated the Student Code. Information that solely addresses the character of any person will be considered only after a finding of responsibility, but prior to any sanctioning determination.

H. Evidence Packet. Any information, including testimony, collected during an investigation that is relevant to the determination of whether the respondent has violated the Student Code. Neither information that solely addresses the character of any person nor information about any complainant's prior sexual conduct with anyone other than the respondent (unless such information is offered to prove that someone other than the respondent is responsible for the alleged conduct) is evidence.

I. Formal Complaint. A document filed by a complainant (and which contains the complainant's physical or digital signature, or otherwise indicates that the complainant is the person filing the formal complaint) or signed by the Title IX Coordinator alleging Title IX Sexual Harassment against a respondent and requesting that the university investigate the allegation of Title IX Sexual Harassment. At the time of filing a formal complaint, a complainant must be participating in or attempting to participate in the education program or activity of the university with which the formal complaint is filed. A formal complaint may be filed with the Title IX Coordinator in person, by mail, or by electronic mail.

J. Investigative Report. A document created by the investigator that fairly summarizes the procedural steps taken in the investigation and the relevant evidence.

K. Investigator. A person responsible for investigating allegations of sexual misconduct on behalf of the university. All investigators are trained on the university's Sexual

Misconduct Policy; the scope of the university's education program or activity; how to conduct an investigation and grievance process; how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias; and on issues of relevance to create an Investigative Report that fairly summarizes relevant evidence.

L. OSCR. The Office for Student Conflict Resolution.

M. Official Communication – communication between the parties and the Office for Student Conflict Resolution will happen via email between university email accounts. Paper copies delivered to the OSCR will be accepted. Should files become too big to share over email, all parties should notify an OSCR staff member. OSCR staff will create a U of I BOX folder (https://box.illinois.edu/) where the party will have the opportunity to transfer large files.

N. Panel. A group of three members of the Subcommittee on Sexual Misconduct appointed by the Executive Director to adjudicate a case involving sexual misconduct. A Panel includes at least one student member.

O. Panel Chair (or Chair). A non-voting OSCR staff member or other non-voting trained designee assigned by the Director to run a hearing. The Director may enlist a staff member or designee who has extensive experience in student disciplinary procedures and training on sexual misconduct to serve as Chair should certain circumstances arise.

P. Party. Any person identified as a complainant or a respondent with respect to a given formal complaint.

Q. Remedies. Measures provided, as appropriate, to a Complainant or any other person the university identifies as having had their equal access to the university's education program or activity limited or denied by sex discrimination. These measures are provided to restore or preserve that person's access to the university's education program or activity after the university determines that sex discrimination occurred.

R. Respondent. A student who has been reported to be the perpetrator of conduct that could constitute Title IX Sexual Harassment.

S. Sanction, Educational. An assignment, requirement, or task imposed by the university that is educationally related to a policy violation.

T. Sanction, Formal. A disciplinary status imposed by the university in response to a policy violation.

U. SCSD. The Senate Committee on Student Discipline. The SCSD is responsible for the student disciplinary procedures, involvement in hearing appeals for its subcommittees and the oversight of the adjudication of student discipline cases.

V. Subcommittee on Sexual Misconduct. The group of faculty, staff, and students responsible for adjudicating cases that include allegations of sexual misconduct. This group is selected through an application process overseen by OSCR and approved by the SCSD. All members are trained on the university's Sexual Misconduct Policy; the scope of the university's education program or activity; how to conduct an investigation and

grievance process; how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias; any technology to be used at a live hearing; issues of relevance of questions and evidence, including when questions and evidence about the complainant's sexual predisposition or prior sexual behavior are not relevant; and other topics deemed appropriate by OSCR staff or required by state and federal law.

W. Supportive Measures. Non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the complainant or respondent before or after the filing of a formal complaint. Such measures are designed to restore or preserve equal access to the university's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the university's educational environment, or deter Title IX Sexual Harassment. Supportive measures include, but are not limited to, counseling, extensions of deadlines or other course-related adjustments, modifications or work or class schedules, no contact directives, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures. The university will maintain as confidential any supportive measures provided to the complainant or the respondent, to the extent that maintaining such confidentiality would not impair the ability of the university to provide the supportive measures. Additional examples of supportive measures are available on the We Care website.

X. Title IX Sexual Harassment. Conduct on the basis of sex that falls into one or more of the following categories as defined in the university's Sexual misconduct Policy: Quid Pro Quo Sexual Harassment, Hostile Environment Sexual Harassment, Sexual Assault, Dating Violence, Domestic Violence, or Stalking.

Y. University-Provided Hearing Advisor. An individual of the university's choice who is present at the live hearing, if a party does not otherwise have an advisor present at the live hearing, to conduct cross-examination, i.e., to ask the other party and any witnesses relevant questions and follow-up questions, including those challenging credibility, on behalf of the party. This will be done without fee or charge to that party. If the party is present at the hearing, their University-Appointed Hearing Advisor will relay the party's own questions during cross-examination. The University-Appointed Hearing Advisor may, but is not required to, ask additional cross-examination questions that they deem appropriate. If the party and their advisor of choice are not present at the hearing, the University-Appointed Hearing Advisor will conduct cross-examination on behalf of that party. The university cannot guarantee equal advisory rights, meaning that if one party selects an advisor who is an attorney, but the other party does not or cannot afford an attorney, the university is not obligated to provide an attorney.

Z. Witness. A person who has relevant information regarding the facts of the case.

## Section 2: Parties' (Respondent and Complainant) Rights

a) Advisor. All parties may bring an advisor with them to any meeting with the investigator or any disciplinary proceeding to which they are invited. This individual may communicate nondisruptively with their student during such proceedings but may not speak for their student or otherwise directly participate. An advisor who fails to follow these instructions or behaves disruptively may be asked to leave. The university will directly communicate the case to the student. The student is responsible for updating their advisor and/or forwarding any correspondence to them. If someone other than the advisor is approved to participate for one party, the other party (ies) should have the same opportunity.

b) Appeal. All parties may appeal the investigator's decision to dismiss the complaint or any allegation therein or the Panel's decision to the SCSD. This process is described in §9 below.

c) Disability Accommodations. A qualifying party has the right to reasonable accommodations during any disciplinary process or proceeding in accordance with §1-110 of the *Student Code*.

d) Evidence Review. All parties will have the opportunity to inspect and review all evidence obtained as part of the investigation that is directly related to the allegations raised in the complaint, including the evidence which will not be relied upon in reaching a determination regarding responsibility and inculpatory or exculpatory evidence whether obtained from a party or other source, so that each party can meaningfully respond to the evidence prior to the conclusion of the investigation.

e) Interpreter. Either party may also bring an interpreter with them to any meeting with the investigator or any disciplinary proceeding to which they are invited, provided that this individual is also not a witness in the investigation. An interpreter who behaves disruptively may be asked to leave. The use of an interpreter does not preclude the party's ability to have an advisor present.

f) Notice. All parties will receive written notification of the allegations and of any meetings or proceedings they are expected to attend. Notice is deemed given immediately when hand delivered or sent to the parties' university email address, or on the following business day when mailed.

g) Objectivity. All disciplinary decisions will be based on an objective evaluation of evidence, including both inculpatory and exculpatory evidence not otherwise impermissible. No disciplinary decisions, including credibility determinations, will be based on a person's status as a complainant, respondent, or witness or on a person's membership in a protected class as listed in the university's Nondiscrimination Policy.

h) Participation. All parties will have an opportunity to identify and present witnesses, including expert witnesses; to provide information directly related to the allegations, including inculpatory and exculpatory evidence; and to participate in any scheduled formal hearing. In addition, the respondent may refuse to provide a requested statement or to answer a question posed to them.

i) Supportive Measures. All parties has the right to request supportive measures. The Title IX Coordinator or their designee is responsible for coordinating the effective implementation of supportive measures, but the respondent may directly request that the investigator issue a no contact directive.

j) Timely Investigation and Decision. Any investigation of a complaint will begin promptly and proceed in a timely manner. The parties will receive a timely written decision following a formal hearing or appellate review.

**Section 3: Evidence**

a) An objective evaluation of all evidence that is relevant, and not otherwise impermissible, including both inculpatory and exculpatory evidence, is required.

b) As defined above and for the purposes of this appendix, evidence is any information, including testimony, that is directly related to the allegations raised in the complaint. The investigator and the Panel have the right to reject or disregard information that is not relevant or is otherwise impermissible when compiling the Evidence Packet, creating the Investigative Report, dismissing the complaint, or reaching a determination regarding responsibility.

c) During cross-examination, as described in §7 below, the Chair will only allow relevant questions, where a relevant question is one that seeks relevant evidence.

d) The following types of evidence will be excluded, and questions seeking these types of evidence are impermissible (i.e., must not be accessed or considered, except by OSCR to determine whether an exception below applies, must not be disclosed, and must not otherwise be used), regardless of whether they are relevant:

1. Evidence that is protected under a privilege as recognized by Federal or State law or evidence provided to a confidential employee, unless the person to whom the privilege or confidentiality is owed has voluntarily waived the privilege or confidentiality;
2. A party's or witness's records that are made or maintained by a physician, psychologist, or other recognized professional or paraprofessional in connection with the provision of treatment to the party or witness, unless the recipient obtains that party's or witness's voluntary, written consent for use in this procedure; and
3. Evidence that relates to the complainant's sexual interests or prior sexual conduct, unless evidence about the complainant's prior sexual conduct is offered to prove that someone other than the respondent committed the alleged conduct or is evidence about specific incidents of the complainant's prior sexual conduct with the respondent that is offered to prove consent to the alleged sex or gender-based misconduct. The fact of prior consensual sexual conduct between the complainant and respondent does not by itself demonstrate or

imply the complainant's consent to the alleged sexual misconduct or preclude determination that sexual misconduct occurred.

**Section 4: Investigation of a Formal Complaint**

(a) Intake and Review. OSCR will oversee investigations of complaints against student respondents. Upon receipt of a complaint, the Director will assign a primary investigator (or investigator) to conduct the investigation. The investigator may be assisted by a secondary investigator (or secondary) as necessary. The investigator will first attempt to interview the complainant to determine the precise nature of the allegations.

(b) Consolidation of Complaints. OSCR may consolidate complaints as to allegations against more than one respondent, or by more than one complainant against one or more respondents, or by one party against the other party, where the allegations arise out of the same facts or circumstances. When a case involves more than one complainant or more than one respondent, references in this appendix to the singular "party," "complainant," or "respondent" include the plural, as applicable.

(c) Dismissal of the Formal Complaint or Any Allegations Therein.

(1) OSCR will dismiss a formal complaint or any allegations therein if, at any time during the investigation or hearing, it is determined that:

(i) The conduct alleged in the formal complaint would not constitute Title IX Sexual Harassment as defined in the Sexual misconduct Policy, even if proved; and/or

(ii) The conduct did not occur in an education program or activity of the university as defined in the Sexual misconduct Policy; and/or

(iii) The conduct did not occur against a person in the United States; and/or

(iv) At the time of filing a formal complaint, the complainant was not participating in or attempting to participate in the education program or activity of the university.

(2) OSCR may dismiss a formal complaint or any allegations therein if, at any time during the investigation or hearing, it is determined that:

(i) A complainant notifies the Title IX Coordinator in writing that the complainant would like to withdraw the formal complaint or any allegations therein; or

(ii) The respondent is no longer enrolled in or employed by the university; or

(iii) Specific circumstances prevent OSCR from gathering evidence sufficient to reach a determination as to the formal complaint or allegations therein.

(3) Upon any such dismissal, OSCR staff will promptly send written notification of the dismissal and the rationale for the dismissal simultaneously to the respondent and the complainant.

(4) The dismissal of a formal complaint or any allegations therein may be appealed by either party to the SCSD in accordance with §8 below.

(5) At OSCR's discretion, allegations dismissed under this section may be investigated and/or adjudicated through the process described in Articles II and III of the Student Disciplinary Procedures.

(b) Allegation Notice. As soon as is practicable after interviewing the complainant (or after unsuccessfully attempting to interview the complainant), the investigator will issue a written allegation notice (to each party's university email address, if they have one) that informs the respondent and the complainant of the following:

(1) A detailed description, including the date (if known) and location (if known), of the alleged incident(s).

(2) The identity (if known) of any complainants involved in the incident(s).

(3) The section(s) of the *Student Code* that the respondent has been accused of violating.

(4) A link to these procedures or an attached copy of these procedures.

(5) A statement that the respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of this process.

(6) A statement that the parties may have an advisor of their choice, who may be, but is not required to be, an attorney.

(7) A statement that the parties may inspect and review evidence in accordance with §6 below.

(8) An instruction for the respondent to call within five business days to schedule a meeting with the investigator. This meeting should occur within ten business days of the allegation notice, unless a conflict between the investigator's availability and the respondent's academic schedule requires the meeting to be delayed further.

(9) A statement that the *Student Code* prohibits retaliation (under §1-302(b)(6) of the *Student Code*) and knowingly making false statements or knowingly submitting false information during the resolution of a formal complaint (under both §1-302(g) and §1-302(o) of the *Student Code*).

(10) Notification that parties and advisors are prohibited from disclosing information obtained by OSCR through this process, to the extent that information is the work product of OSCR (meaning it has been produced, compiled, or written by OSCR for purposes of its investigation and resolution of a Complaint), without authorization.

(b) Respondent Interview. The investigator will attempt to interview the respondent in a timely manner (as described above). If the respondent fails to respond to the allegation notice or refuses to meet with the investigator, the investigation will continue.

(c) Evidence Collection and Witness Interviews. Both parties will be given the opportunity to provide supporting information and documentation and to identify witnesses. The investigator will review all submitted materials and will attempt to interview all witnesses (other than expert witnesses). The investigator may also seek additional information, documentation, and witnesses from other sources.

(d) Follow-up Interviews. The investigator may request additional meetings with the respondent and any complainant to discuss any information gathered during the investigation.

(e) Privilege. The investigator and the Panel will not require, allow, rely upon, or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived the privilege.

(f) Updates. As deemed appropriate by the investigator, OSCR staff will provide both the respondent and the complainant with periodic status updates during the investigation, the review process, and the appeal process.

(g) Ongoing Notice. If, during an investigation, the investigator decides to investigate allegations not included in the original allegation notice, they will issue a new allegation notice in accordance with §5(d) above.

(h) Cooperation with Law Enforcement. If the incident under investigation has also been reported to the police, the investigator will contact the police for any information they are willing to share and may interview officers, detectives, etc. as part of the OSCR investigation. At the request of law enforcement and so as not to interfere with active police investigations, the investigator may delay interviewing specific individuals for short periods of time at the discretion of the Executive Director. However, the OSCR and police investigations are separate processes. As such, they follow different procedures, rules, and regulations, and the outcome of one does not determine the outcome in the other.

(i) Reasonable Delay of Notice. The university may reasonably delay providing the notice of allegations to address reasonable concerns for the safety of any person as a result of issuing the notice of allegations. Reasonable concerns will be based on an individualized safety and risk analysis which evaluates the severity and imminence of a threat to the safety of any person arising from the allegations of sex or gender-based misconduct.

(j) Recordings. Interviews cannot be recorded without express written consent by all individuals involved, and no unauthorized recording is permitted by anyone participating in the investigative interviews. Parties and witnesses may take notes during investigation meetings. Requests for recording of an interview must be submitted with the rationale for consideration to the Director or their designee at conflictresolution@illinois.edu.

(k) Investigator Review of Evidence. The investigator will review all evidence gathered through the investigation and determine what evidence is relevant and what evidence is impermissible regardless of relevance.

**Section 5: Review of Evidence**

(a) Review of Evidence by the Parties. At the conclusion of the investigation but prior to the completion of the Investigative Report, the investigator will compile all evidence into an Evidence Packet and send this packet (in either electronic or hard copy format, at the investigator's discretion) to each party and the party's advisor, if any.

(b) The Evidence Packet will be available at the hearing to give each party an equal opportunity to refer to the evidence during the hearing, including for purposes of cross-examination. The parties will have five business days from the initial release to review and respond to the evidence packet.

(c) Written Responses to the Evidence Packet. The parties will have ten business days to review the Evidence Packet and to submit a written response. The investigator is not required to accept documentary evidence submitted after this deadline or fact witnesses identified after this deadline.

(d) Parties must submit all written, tangible, or documentary evidence and identify all fact witnesses during the investigation and no later than the conclusion of evidence review, provided such information was available to the submitting party. If written, tangible, or documentary evidence or a witness's identity that was not available to a party prior to the conclusion of evidence review becomes available prior to, or on the day of, the hearing, the party should immediately submit this information to OSCR staff. The party should also document why this new information should be included after the documented deadline. The Chair will then determine whether to provide the information to the other party and their advisor, providing them with sufficient time for review, or to send the complaint back to the investigator for further investigation. The Panel will assign appropriate weight to testimonial evidence that is provided at the hearing but was not previously provided to the investigator.

**Section 6: Investigative Report**

(a) Investigative Report Creation. As soon as is practicable after the evidence review period, the investigator will create an Investigative Report that fairly summarizes the procedural steps taken in the investigation and the relevant evidence. If any party has submitted a timely written response to the Evidence Packet, the investigator will consider that response before completing the Investigative Report.

(b) Investigative Report Distribution and Review. The investigator will provide an electronic copy of the Investigative Report to both the respondent and the complainant and their advisors, if any, and notify them that they may submit a written response to the report no later than five business days after the report has been sent.

**Section 7: Formal Hearing**

(a) Appointment of Panel. The Director will appoint a Panel of three members, including at least one student member, of the Subcommittee on Sexual Misconduct (according to their availability and the frequency of their participation) and designate a faculty or staff member to serve as the Chair. Before the membership of this Panel is finalized, OSCR will provide both the respondent and the complainant with a list of all members of the Subcommittee on Sexual Misconduct. At this point, the parties may challenge the objectivity of any person on this list. Such a challenge must be based on an identified bias (e.g., a prior relationship between the party and the member) or an identified conflict of interest. The Director will consider these challenges when making a final decision regarding Panel membership.

(b) Panel Review of Materials. OSCR staff will provide the members of the Panel with electronic access to the Investigative Report, Evidence Packet, and any written responses from the parties and give them sufficient time to review these materials thoroughly.

(c) Scheduling of the Hearing. OSCR staff will schedule a formal hearing before the Panel to take place at least ten business days after the Investigative Report was sent to the parties. At the Director's discretion, OSCR may arrange for the hearing to take place virtually using technology that enables the participants to see and hear each other simultaneously.

(d) Notice of the Hearing. OSCR staff will notify both the respondent and the complainant by email of the date, time, location (or, for a virtual hearing, appropriate access information), participants (including invited witnesses), and purpose of the hearing at least seven business days in advance.

(e) Presumption of No Violation. The respondent is presumed not to be responsible for the alleged conduct until a final determination regarding responsibility has been made at the conclusion of this process.

(f) Hearing Rules

  (1) The hearing will be closed to the public.

  (2) The Chair may exclude from the hearing any person who disrupts the orderly process of the hearing but will do so only after first issuing a warning. The Chair need not consider this cause to reschedule the hearing or continue the hearing on a later date.

  (3) The hearing may proceed (at the Chair's discretion) even if the respondent, the complainant, any advisor (subject to subsection (4) below)), or any witness fails to appear, provided the parties have been notified in accordance with §7(d) above.

  (4) The respondent and the complainant must each have an advisor (or university-provided hearing advisor) present at the hearing to conduct cross-examination. If a party chooses not to attend the hearing, then their chosen advisor may attend the hearing to conduct cross-examination on their behalf. If a party does not bring an

advisor to the hearing or if neither the party nor their chosen advisor chooses to attend the hearing, then OSCR will assign a university-provided hearing advisor to conduct cross-examination on their behalf.

(5) The Evidence Packet will be available at the hearing to give each party equal opportunity to refer to the evidence during the hearing, including for purposes of cross-examination.

(6) Parties must submit all written, tangible, or documentary evidence and identify all fact witnesses during the investigation and no later than the date of distribution of the Investigative Report, provided such information was available to the party. If written, tangible, or documentary evidence or a witness's identity that was not available to a party prior to the date of distribution of the Investigative Report becomes available prior to, or on the day of the hearing, the party should immediately submit this information to OSCR staff. The Chair will then determine whether to provide the information to the other party and their advisor, providing them with sufficient time for review, or to send the complaint back to the investigator for further investigation. The Panel will assign appropriate weight to testimonial evidence that is provided at the hearing but was not previously provided to the investigator.

(7) Persons who have no relevant evidence to provide may not participate as witnesses.

(8) Any witness who is not also serving as an advisor may only participate in the hearing while providing evidence or answering questions.

(9) Both parties may identify expert witnesses to provide testimony at the hearing, but to do so, the party must submit in writing to the investigator the name and contact information for the expert witness by the Investigative Report response deadline described in §7(b) above. Also by this deadline, the expert witness must submit to the investigator a written report describing their credentials and detailing their intended testimony. This information will be provided to the other party in a timely manner, and they will have an opportunity to challenge the witness's expertise. The Chair will determine whether the expert witness will be allowed to participate based on the relevance of their testimony.

(10) The hearing will be audio recorded by OSCR staff. In order to protect the confidentiality of the process and the privacy of individuals involved, no other participants are permitted to record the hearing. The Panel's deliberation is not audio recorded. Any party may review this recording at any time during the seven years following its creation (subject to any procedures or limitations OSCR has in place at the time the review is requested).

(11) The investigator will attend the hearing but will leave the hearing prior to deliberation.

(12) At the Chair's discretion, an employee of the Office of the Dean of Students may attend the hearing and the deliberation to provide administrative support to the Panel. This person will not participate in questioning or offer any opinions during deliberation.

(13) Neither the complainant nor the respondent will be allowed to cross-examine, or otherwise address, each other or any witness directly. Instead, when provided for by the hearing procedures, each party's advisor of choice (or university-provided hearing advisor) will be allowed to cross-examine the investigator, the other party (or parties), and the witnesses. All questions asked during cross-examination must be relevant.

(14) The Chair may instruct a complainant, respondent, or witness not to answer a question asked during cross-examination (or at any other time) if that question has already been answered or is irrelevant, provided the Chair explains their decision. Prior to deciding on a question's relevance, the Chair may ask the questioner to explain the question's relevance. The Chair may also instruct the questioner to reword a relevant question that is asked in a manner that, in the Chair's opinion, is intended to disparage, intimidate, or otherwise harass the individual being questioned.

(15) The Panel may consider statements made by parties or witnesses that are otherwise permitted under these procedures in reaching a determination regarding responsibility even if those parties or witnesses do not participate in cross-examination at the hearing. Furthermore, the Panel may not draw any inference about the determination regarding responsibility based solely on a party's or witness's absence from the hearing or refusal to answer questions.

(16) At the request of the respondent or the complainant, OSCR staff will make arrangements for the parties to participate in the hearing while in different locations using technology enabling the Panel members and the parties to simultaneously see and hear any person who is answering questions.

(17) The Chair will identify at least one break of no fewer than ten minutes for every two hours of the hearing. The respondent and the complainant may also request additional breaks as needed, provided the number of requests is not disruptive to the orderly conduct of the hearing. The Chair will decide whether to grant any such requests.

(18) The Chair may set a reasonable time frame for the hearing and reasonable time limits for each step of the hearing but may allow deviations, provided such allowances are fair and equitable. After consultation with the other Panel members, the Chair may also decide to continue the hearing to another day for good cause. Acceptable reasons include, but are not limited to, the need for additional investigation, the need to seek out additional witness testimony, or the inability to complete all required steps of the hearing process within a reasonable time frame. Both parties must be notified of the date, time, and location at least

seven business days in advance, but prior notification of possible continuance dates will satisfy this requirement.

(19) The Chair may set additional rules for the hearing as needed, provided that none conflict with any provision of this appendix.

(g) Hearing Procedures: Fact Finding

(1) Under the direction of the Chair, all Panel members and participants will introduce themselves by name and role.

(2) The Chair will briefly describe the order of the hearing.

(3) The Chair will invite the investigator to make a statement (if they choose) regarding the investigation, and Panel members may question the investigator. The respondent's advisor and the complainant's advisor will then have an opportunity to question the investigator.

(4) The Chair will invite the complainant to make an opening statement regarding the allegations. This statement should last no longer than ten minutes unless the Chair approves a greater duration. The Panel members will then question the complainant, after which the respondent's advisor will have an opportunity to cross-examine the complainant.

(5) The Chair will invite the respondent to make an opening statement regarding the allegations. This statement should last no longer than ten minutes unless the Chair approves a greater duration. The Panel members will then question the respondent, after which the complainant's advisor will have an opportunity to cross-examine the respondent.

(6) The Panel Chair will invite each participating witness into the room, one at a time, to answer questions from Panel members. For each witness, the respondent's advisor and the complainant's advisor will have an opportunity to as cross-examination questions.

(7) Panel members will have a final opportunity to question the complainant, the respondent, and the investigator regarding the allegations.

(8) The complainant's advisor will have a final opportunity to cross-examine the respondent. And the respondent's advisor will have a final opportunity to cross-examine the complainant.

(9) The Chair will invite the complainant to make a closing statement regarding the allegations. Each statement should last no longer than five minutes.

(10) The Chair will invite the respondent to make a closing statement regarding the allegations. This statement should last no longer than five minutes.

(11) The Chair will excuse the respondent, the complainant, and the investigator from the hearing, and the Panel will enter into closed deliberation to find facts and make

a determination regarding responsibility. The Panel will make its decisions by simple majority vote and will apply the preponderance of the evidence standard.

(h) Hearing Procedures: Deliberation

(1) If the respondent(s) is found not responsible, the deliberation is complete.

(2) If a responsibility finding is made, the Director or designee will provide any written statement of desired outcome, character statements, or impact statements. If a student has disciplinary history that was not deemed relevant to the allegations, that will also be shared after a responsibility finding is made. The Panel will determine an appropriate formal sanction (see §2.09(b) of the Student Disciplinary Procedures) for the respondent. The Panel may also issue educational sanctions and apply additional conditions or restrictions set forth in §2.09(c) of the Student Disciplinary Procedures.

(i) Notice of Action Taken. OSCR staff will provide simultaneous email notification of the Panel's decision to the respondent and the complainant within five business days. This notification will also include:

(1) A statement of the allegations considered by the Panel, including any allegations of Title IX Sexual Harassment;

(2) A description of the procedural steps taken from the receipt of the formal complaint through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;

(3) Findings of fact supporting the determination regarding responsibility;

(4) Conclusions regarding the application of the *Student Code* and other relevant policies to the facts;

(5) A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility;

(6) A list of any formal sanctions, educational sanctions, or behavioral restrictions imposed;

(7) A statement regarding whether remedies designed to restore or preserve equal access to the university's education program or activity will be provided to the complainant; and

(8) Information regarding the parties' right to appeal the Panel's decision.

(9) If there are reasonable concerns to the safety of any person as a result of providing this notice of action taken, OSCR may reasonably delay providing written notice of allegation or outcome to address the safety concern appropriately. Reasonable concerns must be based on an individualized safety and risk analysis.

**Section 8: Appeal Procedures**

(a) Right to Appeal. Both parties have the right to appeal the Panel's decision or the decision of the investigator to dismiss a formal complaint or any allegations therein.

(b) Grounds for Appeal. The appellant must base the appeal exclusively on one or more of the following grounds:

(i) Procedural irregularity that would change the outcome of the matter.

(ii) New evidence that would change the outcome and that was not reasonably available when the determination whether sexual misconduct occurred or dismissal was made.

(iii) The Title IX Coordinator, investigator(s), or Panel members had a conflict of interest or bias for or against complainants or respondents generally or any individual complainant or respondent that would change the outcome of the matter.

(iv) Any sanctions imposed by the Panel were not appropriate for the violation(s) for which the respondent was found responsible.

(c) Notice of Appeal. The appellant must submit a Notice of Appeal and all supporting documentation to the Office for Student Conflict Resolution within five business days of the date of notice of the Panel's decision (or of the investigator's decision to dismiss the formal complaint or any allegations therein).

(d) Content of Notice of Appeal. The Notice of Appeal must contain at least the following: (1) specific grounds for appeal; (2) specific outcome requested; and (3) the appellant's reasons in support of the grounds identified and the outcome requested. The appellant must submit the Notice of Appeal in writing, and the appellant must either sign the Notice of Appeal or submit it by email to OSCR from their university email address (if applicable). Oral appeals are not accepted. If only one party submits a Notice of Appeal, OSCR will notify the other party of the submission and grant the other party access to all submitted documentation. The other party will have five business days from the date of notification to submit a written response to be considered as part of the appeal. If both parties submit a Notice of Appeal, both parties will be informed, granted access to all submitted documentation, and given five business days to submit a written response.

(e) Sanctions Held in Abeyance Pending Appeal. Any formal or educational sanctions imposed will be held in abeyance automatically during the period in which the appeal may be filed and, once an appeal is filed, until the committee reaches a decision on the appeal. Behavioral restrictions such as no contact directives, however, remain in place pending the appeal.

(f) Appellate Review.

(i) The Chair of the SCSD or their designee will identify three SCSD members, of which one must be a faculty member and one a student, to decide the appeal. These individuals will constitute the Appeal Committee. Before the membership of this Appeal Committee is finalized, OSCR will provide both the respondent and the complainant with a list of all members of the SCSD. At this point, the parties may

challenge the objectivity of any person on this list. Such a challenge must be based on an identified bias (e.g., a prior relationship between the party and the member) or an identified conflict of interest. The Chair of the SCSD or their designee will consider these challenges when making a final decision regarding Appeal Committee membership. If the Chair of the SCSD does not serve on the Appeal Committee, they or their designee will select a faculty member to chair the Appeal Committee.

(ii) The Appeal Committee will review all materials that were provided to the Panel, the recording of the hearing, the Notice(s) of Appeal, any documentation provided in support of the Notice(s) of Appeal, and any responses to the Notice(s) of Appeal.

(iii) The Appeal Committee will meet to consider the appeal and will be advised by an OSCR staff member who did not serve as an investigator; this OSCR staff member will not be allowed to vote. Neither the respondent nor the complainant will be allowed to attend the deliberations of the Appeal Committee.

(g) Deliberations. The Appeal Committee will decide by simple majority vote whether the appellant has met any of the grounds for appeal. The decision of the Appeal Committee is final and binding on all parties.

(h) Authority of the Appeal Committee. If the Appeal Committee determines that one (or more) of the grounds for appeal has been met, the Appeal Committee may:

(i) Affirm the decision;

(ii) Modify the decision;

(iii) Remand the case to the original investigator or Panel (with instruction) or to a new investigator or Panel (with or without instruction) for a new decision; and/or

(iv) Modify any sanctions or restrictions imposed.

(i) Notice of Decision. OSCR staff will provide simultaneous email notification of the Appeal Committee's decision, including a rationale, to the parties within five business days of that decision.

**Section 9: Procedural Time Frames**

(a) The anticipated duration of the investigation and hearing process, from the receipt of the formal complainant to the written notification of the Panel's decision, is no more than 60 business days, but the investigator may extend this timeframe in increments of 10 business days for good cause provided the investigator or their designee notifies both parties in writing of the delay and the reason for the delay. Acceptable reasons include, but are not limited to, the complexity of the investigation, the number of witnesses, the need for language assistance or accommodation of disabilities, and the possibility of interruption by break periods.

(b) The anticipated duration of the appeal process, from the written notification of the Panel's decision to the notification of the Appeal Committee's decision, is no more than

25 business days, but the Director may extend this timeframe in increments of 10 business days for good cause provided the Director or their designee notifies both parties in writing of the delay and the reason for the delay.

(c) Any request for a reasonable extension of timeframes provided with rationale will be made to the Director of OSCR by submission to conflictresolution@illinois.edu. Any request will be judged on a case by-case basis for good cause with notice to the parties that includes the reason for the delay.

**Section 10: Petitions to the Subcommittee on Sexual Misconduct**

Persons who have been dismissed from the university for sexual misconduct may petition the Subcommittee on Sexual Misconduct for permission to re-enter the university in accordance with the procedures described in Article IV, Section 4.02.

If the complainant is still affiliated with the university, they will be offered the opportunity to participate in the petition hearing. Any participating complainant will meet with the petitioning panel prior to the respondent entering the hearing.

**Section 11: Additional Responsibilities of the Title IX Coordinator in the Student Discipline System**

(a) Advisory Role of the Title IX Coordinator. The Director and the investigators may seek advice from the Title IX Coordinator or their designee regarding investigations, supportive measures, corrective action remedies, training, and compliance with Title IX and other federal, state, or local laws and regulations.

(b) Title IX Coordinator Determination of Complaint Initiation. In the absence of a complaint or the withdrawal of any or all of the allegations in a complaint, and in the absence or termination of the informal resolution process, the Title IX Coordinator determines whether to initiate a complaint of sex discrimination, including sex-based harassment, under these procedures.

(1) The Title IX Coordinator will consider several factors in determining whether to move forward with a complaint, including:

1. Whether the allegations, as described, could constitute sex discrimination or sex-based harassment under the Sexual misconduct Policy;
2. The complainant's request not to proceed with the initiation of a complaint;
3. The complainant's reasonable safety concerns regarding initiation of a complaint;
4. The risk that additional acts of sex discrimination would occur if a complaint is not initiated;

5. The severity of the alleged sex discrimination, including whether the discrimination, if established, would require the removal of a respondent from campus or imposition of another disciplinary sanction to end the discrimination and prevent its recurrence;
6. The age and relationship of the parties, including whether the respondent is an employee of the university;
7. The scope of the alleged sex discrimination, including information suggesting a pattern, ongoing sex discrimination, or sex discrimination alleged to have impacted multiple individuals;
8. The availability of evidence to assist a decisionmaker in determining whether sex discrimination occurred; and
9. Whether the recipient could end the alleged sex discrimination and prevent its recurrence without initiating these procedures.

(2) If a complaint is initiated, the complainant will be notified prior to doing so and the Title IX Coordinator or designee will appropriately address any reasonable concerns about the complainant's safety or the safety of others, including by providing supportive measures.

(c) Ensure No Continuation or Recurrence of Sex Discrimination. Regardless of whether a complaint is initiated or dismissed, The Title IX Coordinator or designee may take other appropriate prompt and effective steps to ensure that sex discrimination does not continue or recur within the university's education program or activity.

(d) Supportive Measures. The University of Illinois Urbana-Champaign will offer and implement appropriate and reasonable supportive measures to the Parties upon a Report or a Complaint of prohibited conduct under the Sexual misconduct Policy.

(i) The Title IX Coordinator or designee promptly makes supportive measures available to the Parties upon receiving a Report or a Complaint. At the time that supportive measures are offered, if a Complaint has not been filed, the university will inform the Complainant, in writing, that they may file a Complaint with the university either at that time or in the future. The Title IX Coordinator or designee will work with a party to ensure that their wishes are considered with respect to any planned and implemented supportive measures.

(ii) The university will maintain the confidentiality of the supportive measures, provided that confidentiality does not impair the university's ability to provide those supportive measures. The university will act to ensure as minimal an academic/occupational impact on the Parties as possible. The university will implement measures in a way that does not unreasonably burden any party.

(iii) The range of supportive measures, as well as the process to request review of supportive measures, is available on wecare.illinois.edu/policies/campus/interim.

(iv) Violations of no contact orders or other restrictions may be referred to appropriate student or employee disciplinary/grievance processes for enforcement or added as collateral misconduct allegations to an ongoing Complaint under the Sexual misconduct Policy.

(v) If the complainant or respondent is a postsecondary student with a disability, the Title IX Coordinator may consult, as appropriate, with DRES to determine how to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, in the implementation of supportive measures.

(vi) If the complainant or respondent is an elementary or secondary student with a disability, the Title IX Coordinator or their designee must consult with one or more members, as appropriate, of the student's Individualized Education Program (IEP) team, 34 CFR 300.321, if any, or one or more members, as appropriate, of the group of persons responsible for the student's placement decision under 34 CFR 104.35(c), if any, to determine how to comply with the requirements of the Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, in the implementation of supportive measures.

(e) Remedies or Other Actions. Following the conclusion of the disciplinary process, if there is a determination that sex discrimination, sex-based harassment, or retaliation occurred, in addition to any sanctions implemented through the disciplinary process, the Title IX Coordinator or their designee may implement additional remedies or actions with respect to the Complainant and/or other persons identified as having had equal access to the university's education program or activity limited or denied by sex discrimination. Remedies or actions help ensure that sex discrimination does not continue or recur within the university's education program or activity.

(iii) These remedies/actions may include, but are not limited to:

1. Referral to counseling and health services
2. Referral to the Employee Assistance Program or Faculty Staff Assistance and Well-Being Services
3. Course and registration adjustments, such as retroactive withdrawals
4. Education to the individual and/or the community
5. Permanent alteration of housing assignments
6. Permanent alteration of work arrangements for employees
7. SafeWalks
8. Climate surveys
9. Policy modification and/or training
10. Implementation of long-term contact limitations between the Parties
11. Implementation of adjustments to academic deadlines, course schedules, etc.

(iv) At the discretion of the Title IX Coordinator or their designee, certain supportive measures may also be provided to the Parties even if no Policy violation is found.

**Section 12: Privacy**

(a) Any proceeding, meeting, or hearing held as part of the process described in this appendix will protect the privacy of the participating parties and witnesses in accordance with applicable law.

(b) The university will not disclose the identity of the respondent, the complainant, or witnesses except as necessary to implement supportive measures and accommodations, investigate the allegations, conduct any hearing or judicial proceeding, or when provided by state or federal law.

(c) Notification that parties and advisors are prohibited from disclosing information obtained by OSCR through this process, to the extent that information is the work product of OSCR (meaning it has been produced, compiled, or written by OSCR for purposes of its investigation and resolution of a Complaint), without authorization. Parties and advisors are prohibited from publicly disclosing institutional work products that contain a party or witness's personally identifiable information without authorization or consent. Doing so can be subject to discipline under the University of Illinois Code of Conduct or the University of Illinois Student Code.[2]

**Section 13: Required Training and Conflicts of Interest and Bias**

(a) All investigators, Panel members, SCSD members, the Title IX Coordinator and their designees, and any other individual responsible for implementing this Procedure for Allegations of Sexual misconduct ("procedure") must receive annual training in compliance with federal and state laws and regulations.

(b) Any individual materially involved in the administration of this procedure, including the Title IX Coordinator, Investigator, OSCR staff member, Panel member, or SCSD member, may neither have nor demonstrate a conflict of interest or bias for a Party generally, or specifically.

(c) Any individual materially involved in the administration of this procedure who has a conflict of interest with respect to a specific case or party, or complainants or respondents generally, must recuse themselves from any role in that case.

**Section 14: Record-Keeping**

(b) OSCR will maintain for a period of at least seven years records of the following:

(1) The investigation, including any determinations regarding responsibility and any sanctions or behavioral restrictions imposed;

[2] Disclosures of such information and evidence for purposes of administrative proceedings or litigation related to the complaint of Sex Discrimination or Sex-Based Harassment is authorized.

(2) The recording of the formal hearing; and

(3) Any appeal and the result therefrom.

(4) Any remedies provided to the complainant unless records of such remedies are maintained elsewhere, as in the Title IX Office.